USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 97-1363 AMERICAN AIRLINES, INC., Plaintiff, Appellee, v. RADAMES CARDOZA-RODRIGUEZ, MARTA ELAINE COLL-FIGUEROA, ISABEL DE LA PAZ, MARIA D. GARCIA-CACERES, ERNESTO LOPEZ-GARCIA ANA L. MARIN DE RIVERO, CARMEN ANA MARTINEZ-RIVERA CARMEN ALICIA MATTOS, GUILLERMO ORTIZ-ROSA, MARGARITA SANTIAGO-NEGRON AND MARGARITA ZEQUEIRA-JULIA, Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Ivan A. Ramos, with whom Ramos & Ramos-Camara, was on brief for _____________ _____________________ appellants. Terence G. Connor, with whom Laura F. Patallo, Morgan, Lewis & __________________ ________________ ________________ Bockius LLP, Carlos A. Rodriguez-Vidal, and Goldman Antonetti & ____________ ___________________________ _____________________ Cordova, were on brief for appellee. _______ ____________________ January 7, 1998 ____________________ STAHL, Circuit Judge. Defendants-appellants STAHL, Circuit Judge. _______________ Radames Cardoza-Rodriguez et al., ("employees") appeal from __ ___ the district court's issuance of a declaratory judgment in favor of plaintiff-appellee American Airlines ("American") enforcing releases of age discrimination forms executed by appellants and dismissing their counterclaims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. 621 et seq. and Puerto Rico Law 100. We reverse in part __ ___ and vacate and remand in part the district court's declaration that the releases at issue are enforceable. Nonetheless, we affirm the district court's grant of summary judgment on the employees' counterclaim, finding the employees' ADEA claims time-barred. I. I. __ Background Background __________ Because the district court issued the declaratory judgment on plaintiff's motion for summary judgment, we recite the facts in a light most favorable to the non moving party, the employees. DeNovellis v. Shalala, 124 F.3d 298, __________ _______ 305 (1st Cir. 1997).  On September 21, 1994, as part of a workforce reduction program, American offered certain reservation, ticket, and cargo agents in the Commonwealth of Puerto Rico, the opportunity to participate in a Voluntary Early Retirement Program ("VERP"). The VERP provided for the -2- 2 addition of five years to each employee's actual age for purposes of calculating retirements benefits, five years additional credited service, cash bridge payments of $400 per month until the employee became eligible to receive benefits, immediate retirement medical benefits and travel benefits. To be eligible to participate in the VERP an employee had to be at the maximum pay scale in their job classification and at least forty-five years of age. American informed the employees of the program's details by providing various VERP-related documents. The introduction to the "Terms and Conditions" booklet describing the program warned the employees to read the materials carefully, and provided a participation deadline of November 11, 1994, with a seven day rescission period after an election to participate. In order to participate, an employee was required to sign a "Voluntary Early Retirement Election Form" attesting that the decision was "completely voluntary, final and irrevocable," that he or she had been given forty-five days to make the election, and that all rights to reemployment with American were being relinquished. The election form also stated that, on an employee's last day of work, he or she would be required to sign a "Complete Release of All Claims," absolving American of all employment- related liability including, specifically, "age discrimination claims." -3- 3 The VERP election form required each employee to attest to having read the entire release form prior to electing to retire early. By the terms of the release, the employee agreed not to bring any legal proceeding against American in any court, administrative agency, or tribunal, that the employee would forfeit the extra retirement benefits if the employee breached a material release term, and also provided the party successfully enforcing the release costs and attorney's fees. The release contained a provision stating: "I have had reasonable and sufficient time and opportunity to consult with an independent legal representative of my own choosing before signing this Complete Release of All Claims." Although the VERP documentation advised the employee to discuss the program with their families and to "consult a financial advisor," neither the release nor any of the VERP documentation explicitly advised the employees to consult an attorney prior to executing the release or electing to retire. The only mention of independent legal advice was contained in the release, which was not to be signed until the employee's last day of work. Each employee signed the release on his or her last day of work.  The appellants elected to participate in the early retirement program on various dates throughout the election period. The earliest election occurred on October 11, 1994, -4- 4 the latest on December 13, 1994. The VERP also provided that the employees' termination dates would depend on the restructuring process; therefore, after their election, the employees continued to work. Over the next ten months, American began to terminate them individually. The earliest termination occurred on December 30, 1994, while the latest did not occur until September 29, 1995. After each termination, American paid the VERP's enhanced retirement benefits. For several months (the precise period is unclear from the record), each of the appellants accepted and retained these benefits.  On October 27, 1995, over a year after the appellants elected to participate in the VERP, they began to file administrative age discrimination claims with both the Puerto Rico Anti-Discrimination Unit ("ADU") and the Equal Employment Opportunity Commission ("EEOC") variously claiming that their election to participate in the VERP was involuntary and that American had discriminated against them on the basis of age. In general, the complaints alleged that certain management employees had led older employees to believe that American planned to move the operations in the reservation and cargo departments to another location or subcontract to an outside company, placing their jobs in jeopardy. However, once the employees elected to retire, American asked them to train new, younger replacements to -5- 5 fill their jobs. The claimed threatened job losses never materialized. -6- 6 II. II. ___ Prior Proceedings Prior Proceedings _________________ On April 18, 1996, American Airlines responded to the appellants' ADU filings by initiating the instant declaratory judgment action. See 28 U.S.C. 2201. In its ___ pleadings, American asked the district court to issue an order declaring the rights and obligations of the parties in connection with the VERP under the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1132(a)(3).1 Subsequently,  ____________________ 1. Although neither party has addressed the issue, it is our duty to inquire sua sponte into our subject matter jurisdiction. In re Recticel Foam Corp., 859 F.2d 1000, ___________________________ 1002 (1st Cir. 1988). American brought this declaratory judgment action under ERISA, which provides for a civil action:  by a . . . fiduciary (A) to enjoin any act or practice which violates the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions . . . of the terms of the plan.  29 U.S.C. 1132(a)(3). American seeks a declaration of the parties' obligations under the plan in light of the release. We need not confront the question of whether 1132(a)(3) directly authorizes a declaratory judgment in this context. Compare Winstead v. J.C. Penny Co., Inc., 933 F.2d 576, 578- _______ ________ ____________________ 79 (7th Cir. 1991) ( 1132(a)(3) allows a fiduciary to obtain a declaration regarding its obligations under the terms of a plan), with Gulf Life Ins. Co. v. Arnold, 809 ____ ___________________ ______ F.2d 1520, 1523 (11th Cir. 1987) ( 1132(a)(3) does not allow an insurer to obtain a clarification of its duty to pay severance programs). In Franchise Tax Bd. v. Laborers _________________ ________ Vacation Trust, 463 U.S. 1 (1983) the Supreme Court stated:  ______________ Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the -7- 7 American moved under Fed. R. Civ. P. 67 to have the court approve the deposit of future payments of the employees' retirement benefits into a court-designated bank account (the "court registry"). The court granted that motion, and, since May 1996, American has paid the monthly payments due under the VERP into an interest-bearing account. The employees counterclaimed against American for age discrimination under the ADEA, the Older Workers Benefits Protection Act ("OWBPA"), 29 U.S.C. 626(f), and 29 L.P.R.A. 146 et seq., known colloquially as Puerto Rico "Law 100." __ ___ Evidently, once the district court allowed American to deposit the employees' retirement benefits into the court registry, a number of the original employee counterclaimants abandoned their claims. Of the twenty-one employees who  ____________________ declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.  Id. at 19; see also id. at 19 n.19 (discussing jurisdiction ___ ___ ____ ___ in declaratory judgment actions involving patent infringement); cf. Colonial Penn Group, Inc. v. Colonial ___ __________________________ ________ Deposit Group, 834 F.2d 229, 234 (1st Cir. 1987) (quoting ______________ Franchise Tax Bd., 463 U.S. at 19, and dismissing ____________________ declaratory judgment action where threatened coercive action was based on state law). Here, the underlying controversy, whether characterized as the employees' right to sue under American's retirement plan, see 29 U.S.C. 1132(a)(1)(B), ___ or as a claim under the ADEA and OWBPA, clearly presents a wholly federal question. As a result, American's request for a declaratory judgment "arises under" 28 U.S.C. 1331.  -8- 8 brought the original counterclaim, only eleven remain in the case on appeal. On July 22, 1996, American moved for summary judgment requesting a declaration that: (1) the employees had ratified the release agreement under both federal and local law; and (2) the defendants could not maintain any claims relating to their early retirement. American also moved for summary judgment on the employees' counterclaim arguing, inter alia, that the employees administrative filings had _____ ____ been untimely. The court granted American's motion, and on January 27, 1997, issued a declaratory judgment that: (1) Defendants have ratified the release agreements entered into by them in connection with their acceptance of early retirement benefits from American;  (2) the release agreements preclude defendants from raising any claims against American relating to their employment or retirement, including the claims for age discrimination under the [ADEA, OWBPA, and Puerto Rico Law],  (3) Defendants failed to file their claims of age discrimination with the EEOC and Puerto Rico's Anti- Discrimination Unit within the applicable limitations period.  In light of this declaration, the district court granted American's motion for summary judgment on the employees' ADEA and Law 100 counterclaims. This appeal followed.  III. III. ____ Standard of Review Standard of Review __________________ -9- 9 We "review a district court's grant of summary judgment de novo." Marrero-Garcia v. Irizarry, 33 F.3d 117, .  _______ ______________ ________ 119 (1st Cir. 1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on files, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing an award of summary judgment, we must scrutinize the record in the light most amiable to the party opposing the motion, indulging all reasonable inferences in that party's favor. Griggs-Ryan v. ___________ Smith, 904 F.2d 112, 115 (1st Cir.1990). Notwithstanding the _____ liberality of this standard, the nonmovant cannot simply rest on unsworn allegations. Morris v. Gov't Dev. Bank of Puerto ______ _________________________ Rico, 27 F.3d 746, 748 (1st Cir. 1994). "[T]o defeat a ____ properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" LeBlanc v. Great American Ins. Co., 6 _______ _______________________ F.3d 836, 842 (1st Cir. 1993) (quoting Goldman v. First Nat'l .  _______ ___________ Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)). ________________ Finally, "[a]n appellate panel is not restricted to the district court's reasoning but can affirm a summary judgment on any independently sufficient ground." Mesnick v. General .  _______ _______ Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). _________ -10- 10 -11- 11 IV. IV. ___ Discussion Discussion __________ Here, we are faced with two distinct questions. First, was the district court's declaration that the employees' release operated as a bar to their ADEA and Law 100 claims correct? Second, if the release does not bar their claims, are the employees' claims nonetheless barred as a matter of law? We answer the first question in the negative, disagreeing with the district court's determination that the employees' release bars their ADEA counterclaims. We agree, however, that the statute of limitations bars the employees' counterclaim. 1. Is the Release Enforceable? _______________________________ American presents two alternative arguments that the release the employees signed is enforceable: (1) the release complied with the OWBPA, 29 U.S.C. 626(f) or, (2) if the release is invalid under the OWBPA, by refusing to return the enhanced retirement benefits they received under the VERP, the employees ratified the release. We disagree. We find that the employees' release of their ADEA claims did not comply with the OWBPA and that the ratification doctrine -12- 12 does not apply to invalid ADEA waivers.2 We consider their 2 arguments in turn.   ____________________ 2. We emphasize that our holding is limited to releases of ADEA claims that are invalid under the OWBPA. We do not decide or express any opinion on whether the employees validly released their non-ADEA claims. See infra part IV.2.  ___ _____ -13- 13 a. Compliance with the OWBPA ____________________________ Although the district court did not reach this issue, American contends that we can affirm the court's declaration because the releases the employees signed are valid under the OWBPA. We disagree. For an employee's waiver of ADEA rights to be enforceable, it must be "knowing and voluntary." See, e.g., ___ ____ Long v. Sears Roebuck & Company, 105 F.3d 1529, 1534 (3d Cir. ____ _______________________ 1996). Prior to the enactment of the OWBPA, courts split over how to determine whether a waiver of rights was knowing and voluntary. Some courts used "ordinary contract principles" such as fraud, duress, mutual mistake, or lack of consideration, see O'Shea v. Commercial Credit Corp., 930 .  ___ ______ _________________________ F.2d 358, 362 (4th Cir.), cert. denied, 112 S. Ct. 177 _____ ______ (1991); Shaheen v. B.F. Goodrich Co., 873 F.2d 105, 107 (6th .  _______ __________________ Cir. 1989); Moore v. McGraw Edison Co., 804 F.2d 1026, 1033 _____ _________________ (8th Cir. 1986), while others formulated a "totality of circumstances" test, see Bormann v. AT&T Communications, ___ _______ _____________________ Inc., 875 F.2d 399, 403 (2d Cir.), cert. denied, 493 U.S. 924 ____ _____ ______ (1989); Coventry v. U.S. Steel Corp., 856 F.2d 514, 518 (3d ________ _______________ Cir. 1988). To resolve this split, Congress enacted the OWBPA, 29 U.S.C. 626(f), which amended the ADEA by mandating that a waiver of ADEA claims contain certain minimum information to constitute a "knowing and voluntary" waiver:  -14- 14 (1) The release must be written in a manner calculated to be understood by the employee signing the release, or the average individual eligible to participate; (2) the release must specifically refer to claims arising under the ADEA; (3) the release must not purport to encompass claims that may arise after the date of signing; (4) the employer must provide consideration for the ADEA claim above and beyond that to which the employee would otherwise already be entitled;  (5) the employee must be advised in writing to consult with an attorney prior _____ to executing the agreement; __________________________ (6) the employee must be given at least 45 days to consider signing if the incentive is offered to a group;  (7) the release must allow the employee to rescind the agreement up to 7 days after signing; and  (8) if the release is offered in connection with an exit incentive or  group termination program, the employer must provide information relating to the job titles and ages of those eligible for the program, and the corresponding information relating to employees in the same job titles who were not eligible for the program. See 29 U.S.C. 626(f)(1)(A)-(H) (emphasis added). ___  The OWBPA also explicitly places the burden on the party asserting the validity of a waiver to demonstrate that the waiver was "knowing and voluntary." See Id. 626(f)(3); ___ ___ Raczak v. Ameritech Corp., 103 F.3d 1257, 1261 (6th Cir. ______ ________________ -15- 15 1997). To prevail on a motion for summary judgment, therefore, American needed to demonstrate that there was no genuine issue of material fact as to whether the VERP complied with each of the section 626(f) requirements. See ___ Griffin v. Kraft General Foods, Inc., 62 F.3d 368, 371-72 _______ __________________________ (11th Cir. 1995).  Surprisingly, the VERP documents comprising the agreement did not specifically advise the employees to consult with an attorney prior to executing the release. See ___ 29 U.S.C. 626(f)(1)(E).3 Although each employee acknowledged on the VERP election form having read the release before making his or her election, the only reference to consulting legal counsel appears in the release itself, which was not to be executed until the employee actually left work a number of months later. When the employees elected to retire, however, they promised to sign the release on their termination date as a condition of receiving benefits. The release states only: "I have had reasonable and sufficient time and opportunity to consult with an independent legal  ____________________ 3. On appeal, American argues that the VERP informed the employees that:  [E]ach employee should obtain whatever advice he or she required including consultation with personal attorneys or advisors and should make an informed and voluntary choice whether to participate in the plan.  Although American cites to documentation to support this contention, nowhere except in the release does the cited material mention private legal counsel.  -16- 16 representative of my own choosing before signing this Complete Release of All Claims." The VERP Agreement itself, although it advised employees to consult financial and tax advisors, to seek advice from local personnel representatives, and to attend retirement seminars,4 said nothing about seeking independent legal advice prior to making the election to retire and agreeing to execute the release as the statute dictates. Given the burden OWBPA places on employers to demonstrate their agreements contain the required information, the reference contained in the release is insufficient to satisfy 626(f)(1)(E). "Congress's intent in enacting 626 was to compel employers to provide data so that an employee considering waiving ADEA rights could assess, with the assistance of counsel, the viability of an _______________________________ ADEA claim." Raczak, 103 F.3d at 1259 (emphasis supplied). ______ For this purpose, section 626(f)(1)(E) provides that a waiver is not knowing and voluntary unless "the individual is advised in writing to consult with an attorney prior to executing the agreement." To advise is to "caution," "warn," or "recommend." See Webster's Third New World International ___ _______________________________________ Dictionary 32 (1986). This statutory requirement could not __________ be more clear, nor its purpose more central to the statutory  ____________________ 4. It also advised divorced employees to consult an ________ attorney regarding the effects of certain payment options. -17- 17 scheme at issue, especially in light of Congress's concern with discrimination in the suspect context of group exit programs.5 American argues that the waiver form complied with the OWBPA because there is no dispute that the employees were fully aware that only persons in their classifications who were over the age of 45 and at the highest pay rates were  ____________________ 5. The legislative history of the OWBPA states:  In the context of ADEA waivers, the Committee recognizes a fundamental distinction between individually tailored separation agreements and employer programs targeted at groups of employees. . . . During the past decade, in particular, employers faced with the need to reduce workforce size have resorted to standardized programs designed to effectuate quick and wholesale reductions. The trademark of involuntary termination programs is a standardized formula or package of employee benefits that is available to more than one employee. The trademark of voluntary reduction programs is a standardized formula or package of benefits designed to induce employees voluntarily to sever their employment. In both cases, the terms of the programs generally are not subject to negotiation between the parties. In addition, employees affected by those programs have little or no basis to suspect that action is being taken based on their individual characteristics. Indeed, the employer generally advises them that the termination is not a function of their individual status. Under these ______________ circumstances, the need for adequate information and ______________________________________________________ access to advice before waivers are signed is ______________________________________________________ especially acute.  _________________ S. Rep. No. 101-263, at 32 (1990), reprinted in 1990 _____________ U.S.C.C.A.N. 1509, 1537-38 (emphasis added).   -18- 18 eligible, that they were releasing age claims in exchange for enhanced benefits, and that they were provided with all the advice the statute required. We disagree. The fact that the employees may have known they were waiving rights in exchange for enhanced retirement benefits does not satisfy section 626(f)(1)(E). We read section 626(f)(1)(E) to mean what it says: employers must advise employees in writing to consult an attorney prior to executing a release of ADEA claims. The failure to advise the employees to consult with counsel goes to the heart of the statute's purpose.6 Because American failed to directly advise their employees to consult a lawyer before making the election, we rule, as a matter of law, that  ____________________ 6. In light of the OWBPA's imprecise terms, some violations may be so technical as to be de minimis, and thus may not invalidate an otherwise valid release of ADEA claims. See ___ Raczak, 103 F.2d at 1260. American's failure adequately to ______ advise the employees to obtain counsel is in no way de minimis.   -19- 19 American failed to meet its burden under the OWBPA.7 See 29 ___ U.S.C. 626(f)(1). b. Ratification of the Employees' ADEA Waiver _____________________________________________ As we have said, the district court did not decide whether the release complied with OWBPA. Rather, it held that the employees' acceptance of enhanced retirement benefits, as well as their opposition to the court's order to deposit the disputed retirement funds into the court's registry pending the outcome of this litigation, constituted a ratification of the original release agreement. We disagree. In the past, we have applied the ratification doctrine to enforce an otherwise invalid release on the ground that "'[a] contract or release, the execution of which is induced by duress, is voidable, not void, and the person  ____________________ 7. As the employees point out, the waiver is also deficient in another manner. The waiver broadly prohibits employees from maintaining "any legal proceedings of any nature whatsoever against American et al. before any court or __ __ administrative agency" and requires them to "direct that agency or court to withdraw from or dismiss the matter with prejudice" if the agency assumes jurisdiction on their behalf. Section 626(f)(4), however, states: "No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the Commission." Cf. E.E.O.C. v. ___ ________ Astra U.S.A., Inc., 94 F.3d 738, 744 (1st Cir. 1996) ("[A]ny __________________ agreement that materially interferes with communication between an employee and the Commission sows the seeds of harm to the public interest"); E.E.O.C. v. Cosmair, Inc., 821 F.2d ________ _____________ 1085, 1089-90 (5th Cir. 1987)(holding pre-OWBPA that an employee cannot waive the right to file a charge with the EEOC).   -20- 20 claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so.'" In re Boston Shipyard Corp., 886 F.2d 451, 455 (1st ___________________________ Cir. 1989) (quoting Di Rose v. PK Management Corp., 691 F.2d _______ ___________________ 628, 633-34 (2d Cir. 1982)). The related tender-back doctrine requires a party seeking to avoid a contract based on duress to first return any consideration received. See ___ Deren v. Digital Equipment Corp., 61 F.3d 1, 1 (1st Cir. _____ ________________________ 1995). American asserts that the employees' retention of the enhanced benefits received from the VERP ratified the invalid waiver. The retention of benefits is relevant, however, only if the ratification and tender-back doctrines apply to waivers of ADEA claims after the adoption of the OWBPA. The circuits are split on whether the acceptance of benefits ratifies an otherwise invalid waiver of ADEA claims.8 A majority, both before and after OWBPA's enactment, have held that neither ratification nor tender- back is appropriate when employees have signed an invalid ADEA waiver. See Howlett v. Holiday Inns, Inc., 120 F.3d ___ _______ ___________________ 598, 601-03 (6th Cir. 1997) (post-OWBPA); Long v. Sears ____ _____ Roebuck & Co., 105 F.3d 1529, 1533 (3d Cir. 1997) (post- ______________ OWBPA); Oberg v. Allied Van Lines, Inc., 11 F.3d 679 (7th _____ _______________________  ____________________ 8. This issue has been argued before the Supreme Court and a decision is currently pending. See Oubre v. Energy ___ _____ ______ Operations, Inc., 1996 WL 28508 (E.D. La.), aff'd, 102 F.3d ________________ _____ 551 (5th Cir. 1996), cert. granted, 117 S. Ct. 1466 (1997)).  _____ _______ -21- 21 Cir. 1993) (post-OWBPA), cert. denied, 511 U.S. 1108 (1994); ____________ Forbus v. Sears, Roebuck & Co., 958 F.2d 1036 (11th Cir. ______ ______________________ 1992) (holding, pre-OWBPA, that the ADEA displaced the tender-back doctrine); cf. Raczak v. Ameritech Corp., 103 ___ ______ ________________ F.3d 1257, 1260 (6th Cir. 1997)(affirming without a majority rationale the district court's refusal to apply ratification doctrine to an invalid ADEA waiver). In addition, a district court in this circuit has sided with the majority view. See ___ Soliman v. Digital Equip. Corp., 869 F. Supp. 65 (D. Mass. _______ ___________________ 1994). The Fourth and Fifth Circuits and some district courts, however, have held that a waiver that does not comply with the OWBPA is voidable, rather than void; thus, a plaintiff who retains retirement benefits ratifies the invalid waiver. See Blistein v. St. John's College, 74 F.3d ___ ________ __________________ 1459, 1466 (4th Cir. 1996); Blakeney v. Lomas Info. Sys., 65 ________ ________________ F.3d 482, 484 (5th Cir. 1995); see also Hodge v. New York ___ ____ _____ ________ College of Podiatric Medicine, 940 F. Supp. 579, 582 _________________________________ (S.D.N.Y. 1996); Bilton v. Monsanto Co., 947 F. Supp. 1344 ______ ____________ (E.D. Mo. 1996). The arguments for and against incorporating the ratification and tender-back doctrines into the ADEA have been thoroughly reviewed in these cases, and we will not repeat their analysis fully.  The decisions in favor of ratification primarily argue that, because Congress used "the terms 'knowing' and 'voluntary,' which parallel the common-law concepts of fraud, -22- 22 duress, and mistake, it is apparent that Congress was defining only those circumstances in which a contract would be voidable, not when it would be void." Blistein, 74 F.3d ________ at 1466. A voidable contract can, of course, be ratified by subsequent conduct. See id. Accordingly, in the absence of ___ ___ any language in the statute indicating that a waiver that contravenes the OWBPA cannot be ratified, the common-law rule still operates. See Wamsley v. Champlin Ref. & Chems. Inc., ___ _______ ____________________________ 11 F.3d 534, 539-40 (5th Cir. 1993). The majority view rests on two primary arguments: (1) the plain language of OWBPA and its legislative history indicate that Congress did not intend ratification to apply to releases that are invalid under OWBPA, see Long, 105 F.3d ___ ____ at 1537; and (2) the OWBPA displaced the common-law tender- back doctrine under Hogue v. Southern Ry. Co., 390 U.S. 516 _____ ________________ (1968). We reject the view adopted by the Fourth and Fifth Circuits and adopt the majority position. At common law, a waiver of rights was simply a contract, subject to defenses like duress or mistake. When Congress enacted the OWBPA, however, it specifically rejected using ordinary contract principles to govern the validity of ADEA waivers. Long, 105 ____ F.3d at 1539 (reviewing legislative history); see also S. ___ ____ Rep. No. 101-293, see supra note 4, at 32 (disapproving of ___ _____ the approach adopted in Lancaster v. Buerkle Buick Honda Co., _________ _______________________ 809 F.2d 539 (8th Cir. 1987)). Instead, Congress enacted a -23- 23 "floor" of specific procedures an employer must follow before an employee's waiver is effective. See S. Rep. No. 101-293, ___ supra note 4, at 32 (noting that the OWBPA "establishes _____ specified minimum requirements that must be satisfied before a court may proceed to determine factually whether the execution of a waiver was 'knowing and voluntary'"). Section 626(f)(1) states a clear rule: an individual "may not waive" an ADEA claim unless the waiver is "knowing and voluntary." And a waiver is not knowing and voluntary unless the employer complies with the eight OWBPA requirements. See id. ___ ___ Incorporating the ratification doctrine into this statutory scheme would emasculate the Act. "Through the OWBPA Congress sought to insure that employees faced with deciding whether to sign an ADEA waiver and forego an ADEA claim be provided with sufficient information to allow them to evaluate the merits of that claim." Long, 105 F.3d at ____ 1542. The ratification doctrine rests on a fiction that the retention of benefits by the injured party forges a new contract once the fraud has been discovered. Id. at 1539. ___ An employee, however, "could no more assent to the waiver of his ADEA claim after having signed the defective release than _____ he could at the time of signing it." Howlett, 120 F.3d at ____________ _______ 601 (emphasis in original). To allow the simple retention of benefits to validate a noncomplying waiver would mean that -24- 24 OWBPA applied to the first contract, but not to the fictional second contract. See Long, 105 F.3d at 1540.  ___ ____ When, as here, an employer fails in the simple task of advising its employees to consult an attorney prior to electing to retire, the employee is more likely to face a critical decision without the knowledgeable guidance necessary to assess whether he or she is possibly a victim of age discrimination. If the ratification doctrine is incorporated into this scheme, an employer could obtain waivers without advising the employee to consult an attorney and then put the employee to the difficult choice of giving up essential benefits in order to protect his or her rights. The very problem that Congress enacted the OWBPA to remedy could thus resurface, albeit through the back door. Therefore, incorporating the ratification doctrine into the OWBPA could act to undermine the incentives for employers to follow OWBPA's procedures and deter the prosecution of meritorious claims. Cf. Hogue v. Southern Ry. Co., 390 U.S. ___ _____ ________________ 516 (1968) (holding that the Federal Employer Liability Act displaced the common-law tender-back requirement).9  ____________________ 9. American relies on Deren v. Digital Equip. Corp., 61 F.3d _____ ____________________ 1 (1st Cir. 1995) in contending that ratification is appropriate unless Congress indicates a clear intent to the contrary. Such reliance is misplaced. In Deren, the court _____ held that an employee's waiver of ERISA claims was ratified by his retention of benefits for three and one-half years. Unlike the ADEA waivers here, however, the validity of an ERISA waiver is governed by federal common-law principles, see Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d ___ _____ _______________________________________ -25- 25 The conflict between common-law ratification and the statutory scheme at issue here is particularly stark when an employer seeks to induce an employee to accept early retirement. Here, the employees voluntarily agreed to retire in exchange for enhanced benefits without which, American assures us, they would have remained on the job at American's highest pay scale. Courts applying the ratification doctrine to ADEA claims have stated that the employees must be required to restore the status quo by tendering-back the benefits they received for waiving their claims. See ___ Blakeney, 65 F.3d at 485. This position is arguably ________ plausible in the context of a unilateral termination when an employee receives severance benefits an employer would not have paid but for the release. See, e.g., Wamsley, 11 F.3d ____ ____ _______ at 72. In the context of a voluntary retirement program, however, tendering back the benefits received does not restore the status quo. For instance, American does not contend that the employees should, as a precondition to suing, refuse their retirement benefits and seek reinstatement. American does not, in other words, contemplate the restoration of the status quo. Rather, American wants to use the ratification doctrine to retain the economic benefit of the employees'  ____________________ 173, 178 (1st Cir. 1995), rather than a detailed set of statutory procedures. Therefore, Deren does not require the _____ incorporation of the ratification doctrine into the OWBPA. -26- 26 decisions to retire early -- a decision obtained by American in violation of the OWBPA. As the Forbus court noted, this ______ result could "encourage egregious behavior on the part of employers in forcing certain employees into early retirement for the economic benefit of the company." 958 F.2d at 1041. We therefore join the majority of courts which have considered the issue and conclude that an employee's retention of benefits does not act to ratify a waiver of ADEA claims that fails to comply with the OWBPA.10 Thus, we reverse the district court's declaration that the release precludes defendants from raising age discrimination claims under the ADEA.  ____________________ 10. Our holding is limited only to waivers that violate OWBPA's requirements. Whether the ratification and tender- back doctrines apply to a waiver that complies with the OWBPA but is not "knowing and voluntary" for a different reason, see Reid v. IBM Corp., 1997 WL 357969, at *4 (S.D.N.Y 1997), ___ ____ _________ is a separate question, one we need not reach today.  -27- 27 2. Ratification of the Employees' Law 100 Waivers _________________________________________________ Our rejection of the ratification doctrine in the ADEA context has implications for whether, as the district court s judgment declares, the release bars non-ADEA claims. Though cursory mention of state law was made in the summary judgment motions, both parties centered their arguments on the question of whether the release, as a whole, was subject to the ratification doctrine under federal and Puerto Rico law. The district court opinion is unclear as to whether the release, despite the employees' invalid waiver of ADEA claims, nonetheless would bar their Puerto Rico Law 100 claims, as well as any other claims relating to their employment. In reaching a conclusion that it does, the court merely stated: "The result is the same under Puerto Rico law."  In Long, the Third Circuit, facing the same ____ problem, explained:  [T]he district court rested its grant of summary judgment as to all claims on its finding that the release as a whole was voidable and had been ratified . . . .  Our holding, confined as it is to ADEA releases invalid under OWBPA, does not automatically dispose of the remainder of [the employee's] claims as might be the case if we had rested our decision on the void/voidable distinction. 105 F.3d at 1544-45. To ensure that the parties had an adequate opportunity to litigate this issue, the Long court ____ vacated the district court's entry of summary judgment on the -28- 28 non-ADEA claims and remanded for further consideration. Id. ___ at 1545. We think the same prudent approach is warranted here. While we express no opinion on the issue, we vacate the district court's declaration that the release bars non- ADEA claims and remand that issue for further consideration consistent with our opinion.11 Cf. Eagle-Picher Industries, ___ ________________________ Inc. v. Liberty Mut. Ins. Co., 829 F.2d 227, 246 (1st Cir. ____ ____________________ 1987) (vacating language in final judgment and remanding for further consideration). V. V. __ Monetary Benefits Deposited in the Court Registry Monetary Benefits Deposited in the Court Registry _________________________________________________ In May 1996, the district court ordered the deposit of the employees' retirement benefits into an interest- bearing account pursuant to Fed. R. Civ. P. 67. During the  ____________________ 11. As already noted, we affirm the court's dismissal of ADEA and Law 100 claims because they are barred by the statute of limitations. See infra. The statute of ___ _____ limitations does not, however, provide an independent basis for affirming the district court's declaratory judgment. The district court s declaratory judgment had three parts: (1) that the release was ratified, (2) that the release precludes all employment related claims (including ADEA claims), and ___ (3) that the employees age discrimination claims are time- barred. On appeal, we must determine if the trial court's declaratory judgment, a final ruling that is res judicata in any future litigation concerning this release, is correct in all respects. See 10A Charles A. Wright, et al., Federal ___ _______ Practice and Procedure, 2771 (1983)("A declaratory ________________________ judgment is binding on the parties before the court and is res judicata in subsequent proceedings as to the matters declared. . . ."). The statute of limitations is relevant only to the third part of the district court s declaratory judgment. Therefore, we must reach the ratification issue despite the fact that the employees counterclaim is barred by the limitations period. -29- 29 pendency of this action, these funds have been accumulating. The question remains as to their proper disposition. The record reflects that American choose not to address this issue on summary judgment and neither party raises it on appeal. Therefore, we do not reach this issue. We note, however, that these funds are due to the employees unless there exists a basis for their retention. We leave this for the district court to determine on remand in a manner consistent with this opinion.  VI. VI. ___ Statutes of Limitations Statutes of Limitations _______________________ The district court granted American summary judgment on the ground that the applicable limitations periods barred all of the employees' counterclaims. We affirm as to the federal claims, although we clarify that four of the employees' Law 100 claims were not barred by the statute of limitations.  1. The ADEA Claims __________________ In "deferral states" (states which have enacted employment discrimination laws) such as Puerto Rico, employees must file charges of unlawful age discrimination in employment with the EEOC within 300 days "after the alleged unlawful practice occurred." 29 U.S.C. 626(d). American contends that the employees filed their claims with the ADU and the EEOC outside the 300-day time limit imposed by the -30- 30 ADEA. We agree. To determine the timeliness of the employee's complaint, we must specifically identify when the unlawful practice that the employees claim violated the ADEA occurred. See Lorance v. A.T. & T. Techs., 490 U.S. 900, 904 ___ _______ ________________ (1989). The gravamen of the employees' complaint is that American misled them into believing that they were faced with an impossible choice: retire with enhanced benefits or face termination when American eliminated the cargo and reservations operations in San Juan. In Vega v. Kodak ____ _____ Caribbean Ltd., 3 F.3d 476 (1st Cir. 1993), we explained that ______________ such a "take it or leave it" choice that discriminates on the basis of age is unlawful. To transform an offer of early retirement into a constructive discharge, a plaintiff must show that the offer was nothing more than a charade, that is, a subterfuge disguising the employer's desire to purge the plaintiff from the ranks because of his age. . . . [A] plaintiff who has accepted an employer's offer to retire can be said to have been constructively discharged when the offer presented was, at rock bottom, a choice between early retirement with benefits or discharge without benefits . . . .  Id. at 480 (citations and internal quotations omitted). If ___ the VERP was a charade, then American discriminated against the employees by providing them no choice but to participate in an early retirement program offered only to older employees. As the alleged discriminatory act, this constructive discharge triggered the limitations period. See ___ -31- 31 Young v. Nat'l Ctr. for Health Servs. Research, 828 F.2d 235, _____ _____________________________________ 238 (4th Cir. 1987); cf. Kimzey v. Wal-Mart Stores, Inc., 107 ___ ______ _____________________ F.3d 568, 573 (8th Cir. 1997) (applying rule in Title VII case). It follows that, at the latest, the applicable statutes began to run when each employee accepted the VERP. All the employees accepted the VERP more than 300 days prior to filing their administrative claims.12 Therefore, the employees claims are time-barred. The employees' arguments to the contrary are flawed. The employees first argue that the statute did not  ____________________ 12. The defendants/employees have provided a table titled "Summary of Relevant Dates" that set forth the applicable election and filing dates for calculating the limitations periods. American has not disputed the accuracy of these dates.  VERP ADU Days  VERP ADU Days  Employee Accepted Filing Post VERP Employee Accepted Filing Post VERP Cardoza-Rodriguez 10/18/94 10/29/95 376 Coll-Figueroa 10/28/94 10/27/95 364 De La Paz 10/11/94 10/27/95 381 Garcia-Caceres 10/12/94 11/15/95 399 De Rivero 10/14/94 10/27/95 378 Martinez-Rivera 12/12/94 10/27/95 318 Mattos 11/3/94 10/27/95 356 Ortiz-Rosa 10/18/94 11/15/95 393 Santiago-Negron 10/21/94 10/30/95 374 Zequiera-Julia 12/13/94 10/27/95 317 Lopez-Garcia 11/10/94 11/15/95 370 -32- 32 start to run until they actually left American's employ after electing to retire early. This argument is meritless. In Delaware State College v. Ricks, 449 U.S. 250, 257 (1980) the ______________________ _____ Supreme Court held that a plaintiff's Title VII claim accrued when the employee was denied tenure due to alleged race discrimination, not when his actual employment contract expired one year later. Because the allegedly unlawful act was the denial of tenure, the termination date itself was merely the "inevitable consequence" of prior discrimination and thus did not trigger the statute of limitations. Id. at ___ 257-58. Here, the employees' job termination was similarly the inevitable result of their decision to participate in the VERP. The employees' contend that their discrimination claims did not accrue until younger workers actually replaced them. This argument fails because a prima facie age discrimination claim does not necessarily require replacement by a younger worker. See Sanchez v. Puerto Rico Oil Co., 37 ___ _______ ___________________ F.3d 712, 719 n.7 (1st Cir. 1994) (citing cases). Instead, when an employer implements a reduction-in-force, "the [employee] may demonstrate either that the employer did not treat age neutrally or that younger persons were retained in the same position." Hildalgo v. Overseas Condado Ins. ________ _______________________ Agencies, Inc., 120 F.3d 328, 333 (1st Cir. 1997)(internal _______________ quotations omitted). We have stated categorically: -33- 33 "[W]hen an employee knows that he has been hurt and also knows that his employer has inflicted the injury, it is fair to begin the countdown toward repose. And the plaintiff need not know all the facts that support his claim in order for countdown to commence."   Morris, 27 F.3d at 750. When the employees signed the VERP, ______ they knew that the program was offered only to employees over forty-five years of age. And it was then, the employees allege, that American presented them with a "take it or leave it" choice between early retirement and losing their jobs. As a result, by the time the employees were allegedly pressured into accepting early retirement, they had sufficient information to bring their discrimination claim. See id. ___ ___ In this case, the limitations period commenced when the employees elected to participate in the VERP. Thus, unless there exists a basis for equitable modification of the limitations period, all the employees' ADEA claims are barred as a matter of law. 2. Equitable Estoppel and Tolling _________________________________ The employees contend that the doctrines of equitable estoppel and equitable tolling should save their claims.13 We reject the application of these doctrines here.  ____________________ 13. The ADEA filing period is akin to a statute of limitations and thus, subject to equitable modification. See ___ Mercado-Garcia v. Ponce Federal Bank, 979 F.2d 890, 895 (1st ______________ __________________ Cir. 1992). -34- 34 Equitable estoppel is invoked when an employee is aware of his ADEA rights, but does not make a timely filing due to his reasonable reliance on his employer's deceptive conduct. Kale v. Combined Ins. Co. of America, 861 F.2d 746, ____ ____________________________ 752 (1st Cir. 1988). The employees have failed to allege such conduct here. Rather, they have simply parroted the same events that gave rise to their underlying claim: that American misled them as to the reason for the VERP. There is no evidence that American caused the employees to delay bringing their lawsuit, or otherwise "lulled the plaintiff[s] into believing that it was not necessary for [them] to commence litigation." Dillman v. Combustion Eng., Inc., 784 _______ _____________________ F.2d 57, 60 (2d Cir. 1986). Thus, equitable estoppel is not warranted.  Equitable tolling is appropriate when the plaintiff demonstrates "excusable ignorance" of his statutory rights. Kale, 861 F.2d at 752. Equitable tolling does not apply, ____ however, if an employee is actually or constructively aware of his or her ADEA rights. Id. at 753. An employee has ___ actual knowledge of his rights if he "learns or is told of his ADEA rights, even if he becomes only generally aware of the fact there is a statute outlawing age discrimination." Id. ___ In this case, each employee signed the VERP election form, which contained a paragraph attesting that he -35- 35 or she had read the release. The release stated that the employees were releasing American from any age discrimination claims he or she may have had. Therefore, the employees had actual knowledge of their ADEA rights. In addition, the employees have alleged here that, shortly after inducing them to sign the VERP, American went on a "recruitment frenzy of new reservation agents" and announced that the cargo department would remain in Puerto Rico despite American's earlier claims. In light of these facts, the employees' claim that their "excusable" ignorance caused them to wait far longer than 300 days to pursue their claims is untenable.14 See Cada v. Baxter Healthcare Corp., 920 F.2d ___ ____ ________________________ 446, 452 (7th Cir. 1990) (holding that equitable tolling was not warranted when the employee discovered, three weeks after receiving notice of his termination, that a younger employee would replace him).  3. The Puerto Rico Law 100 Claims  _________________________________ The employees contend that their Law 100 claims are not barred by the statute of limitations. In pertinent part,  ____________________ 14. The employees allude to the theory of continuing violations, which applies when a plaintiff alleges repetitive instances of discrimination perpetuated over time. See Havens ___ ______ Realty Corp. v. Coleman, 455 U.S. 363, 380 (1982); United Air ____________ _______ __________ Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). The ____________ _____ employees have, however, failed properly to allege any factual basis for finding an act of discrimination within the limitations period. This claim therefore fails as a matter of law.  -36- 36 Law 100 forbids adverse employment actions based on any one of several protected characteristics, including age. See ___ P.R. Laws Ann. tit. 29, 146 (1985); Sanchez, 37 F.2d at _______ 723. Under substantive Puerto Rico law generally, actions for civil liability based on fault commence "from the time the aggrieved person had knowledge thereof." P.R. Laws Ann. tit. 31, 5298 (1991); Rodriguez v. Nazario De Ferrer et _________ _____________________ al., 121 P.R. Dec. 347, P.R. Offic. Trans. No. CE-86-417, at ___ 9 (P.R. 1988).  In Olmo v. Young & Rubicam of P.R., Inc., 110 P.R. ____ ______________________________ Dec. 740 (P.R. 1981), the Supreme Court of Puerto Rico held that the one year statute of limitations in Article 1868 of the Puerto Rico Civil Code applied to Law 100 claims. Like ADEA claims, a cause of action under Law 100 accrues when an employee becomes aware of his injury through receipt of a termination notice.15 See Rodriguez, P.R. Offic. Trans. No. ___ _________  ____________________ 15. The employees cite Sanchez v. A.E.E., 97 J.T.S. 45 _______ ______ (1997) for the proposition that the statute of limitations under Law 100 begins to run from the last day that an employee was employed. American contests this reading, asserting that the case dealt with a hostile and persistent sexual harassment work atmosphere, was issued without a formal opinion, and thus, has no precedential value. We direct the employees' attention to U.S. Ct. of App. 1st Cir. Rule 30.7, 28 U.S.C.A. (West 1997):  Whenever an opinion of the Supreme Court of Puerto Rico is cited in a brief and oral argument which does not appear in the bound volumes in English, an official, certified or stipulated translation thereof with three conformed copies shall be filed. -37- 37 CE-86-417, at 9; see also Montalban v. Puerto Rico Marine ___ ____ _________ ___________________ Management, Inc., 774 F. Supp. 76, 77 (D.P.R. 1991)(applying _________________ Puerto Rico law). Therefore, in the context of a constructive discharge, the date the employee elects to retire triggers the Law 100 limitation period. All of the employees' claims, with the exception of four discussed below (Coll-Figuera, Martinez-Rivera, Mattos, and Zequiera-Julia), are thus barred by statute of limitations as a matter of law. The remaining four employees' Law 100 claims are not time-barred; they fail on the merits as a matter of law. To survive summary judgment, an employee must submit at least some evidence upon which a jury could properly proceed to find an employer guilty of age discrimination. See De ___ __ Arteaga v. Pall Ultrafine Filtration Corp., 862 F.2d 940, 941 _______ _______________________________ (1st Cir. 1988) (affirming summary judgment on Law 100 complaint for lack of evidence). With respect to the remaining four employees, the record is devoid of any ___ competent evidence demonstrating that they were victims of age discrimination. These four employees have failed individually to submit even sworn affidavits attesting that they suffered age discrimination. Rather, they appear to rely wholly on the general allegations contained in their  ____________________ The employees have not complied with this rule. Thus, we decline their invitation to find that the Supreme Court of Puerto Rico has overruled Rodriguez.  _________ -38- 38 complaint and the affidavits of their fellow employees. Such evidence cannot withstand a motion for summary judgment. See ___ Fed. R. Civ. P. 56(c); see also Mesnick, 950 F.2d at 822 (an , ___ ____ _______ appellate panel can affirm on any independently sufficient ground). VIII. VIII. _____ In conclusion, we hold that the release violated the OWBPA and that the employees' retention of benefits does not act to ratify a waiver that failed to comply with the OWBPA. We therefore reverse that portion of the district court's judgment declaring that the employees' retention of benefits ratified the release of their ADEA claims. We vacate and remand to the district court to further consider the issue of whether the release bars non-ADEA claims. We affirm the district court's entry of summary judgment on the employees' counterclaims.  Affirmed in part; reversed in part; vacated and ___________________________________________________ remanded in part. No costs. _________________ -39- 39