USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1725

 FABIO T. MORAIS,

 Plaintiff, Appellant,

 v.

 CENTRAL BEVERAGE CORPORATION UNION 
 EMPLOYEES' SUPPLEMENTAL RETIREMENT PLAN,
 ABACUS BENEFIT CONSULTANTS AND GEORGE MATTA, SR.,
 
 Defendants, Appellees.
 

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF RHODE ISLAND
 
 [Hon. Mary M. Lisi, U.S. District Judge]
 

 Before
 
 Torruella, Chief Judge,
 Coffin, Senior Circuit Judge,
 and Boudin, Circuit Judge.
 
 

 Marybeth Holland for appellant.
 Richard D. Wayne with whom Debra Dyleski-Najjar and Samuel J.
Kolodney were on brief for appellees Central Beverage Corporation
Union Employees' Supplemental Retirement Plan and George Matta, Sr.
 Joseph J. Reale, Jr. for appellee Abacus Benefit Consultants.

February 11, 1999

 
 
 COFFIN, Senior Circuit Judge. Appellant Fabio Morais
claims that his disability pension was incorrectly calculated by
his employer's retirement plan. He first raised this issue in
1994, and resolved the dispute at that time by signing a
"Settlement Agreement" under which he was given $5,000. About two
years later, Morais raised the same complaint about his benefits
and, unsatisfied by the response, brought this case under ERISA,
see 29 U.S.C. 1132 (a)(1)(B), against the plan and its
administrator. The district court granted summary judgment for
the defendants, adopting the magistrate judge's Report and
Recommendation that the Settlement Agreement barred Morais' claims. 
We affirm.
 I. Background
 The following facts are undisputed. Morais worked for
Central Beverage Corporation for many years before retiring in 1993
following serious on-the-job back injuries. He was awarded a total
disability pension but, at some point thereafter, was advised that
his monthly payments would be reduced to offset a lump sum payment
he received in settlement of a workers compensation claim. Morais
objected to the reduction in benefits and filed a union grievance. 
On December 30, 1995, Morais and George Matta, president of Central
Beverage, signed a document labeled "Settlement Agreement," in
which Morais acknowledged receiving $5,000 for releasing "and
forever discharg[ing]
 Central, its agents, officers, directors and
 employees, and the Central Beverage Corp.
 Union Employees' Supplemental Retirement Plan
 and its Administrator, from all claims or
 causes of action whatever which he may now
 have or hereafter can, shall or may have by
 reason of any matter, cause or action or thing
 whatever, including, but not limited to, any
 claims arising out of his retirement from the
 employ of Central and the calculation of his
 disability pension, and/or any other federal,
 state or local laws, regulations or
 ordinances, which he had, now has or shall
 have as of the date of this Agreement.
 
The Agreement also stated that Morais had directed Teamsters' Local
Union No. 251 to withdraw his grievance and his demand for
arbitration.
 In mid-1997, some twenty months after the Agreement was
signed, Morais again sought a recalculation on the same basis. His
claim was denied and, in January 1998, he filed this lawsuit. In
addition to a claim under ERISA challenging the offset of his
worker's compensation benefits against his monthly disability
pension, Morais alleged a breach of fiduciary duty by Matta and a
state law claim against all defendants for intentional infliction
of emotional distress.
 The defendants moved to dismiss based on the Agreement. 
Morais opposed the motion, claiming that the Agreement was invalid
because of a variety of factors assertedly showing that he was at
an unfair disadvantage in the dealings leading to the Agreement and
that he failed to appreciate the impact of signing it. See infraat 8. The magistrate judge converted the motion to one for
summary judgment and, after a hearing, applied Rhode Island
contract law to conclude that the Agreement barred Morais' claims. 
The district court rejected Morais' objections and granted summary
judgment for defendants.
 On appeal, Morais contends that the court erred in using
state law and that, under applicable ERISA precedents, the
Settlement Agreement does not serve as a valid waiver of his right
to challenge the amount of his pension. He also argues that the
district court erred in granting summary judgment for defendant
Abacus, the plan administrator, and erroneously failed to consider
his other claims. The defendants continue to maintain that the
Settlement Agreement is a bar to Morais' renewed challenge to his
pension amount, and they contend that the district court properly
applied Rhode Island law to reach that conclusion. Although our
analysis takes a different route from that of the district court,
we reach the same conclusion and affirm its grant of summary
judgment.
 II. Discussion
 This case appears to have veered off course in multiple
respects. Most central is that the district court (through the
magistrate judge) applied Rhode Island law to construe the
Settlement Agreement releasing Morais' ERISA-based claims, although
it is well settled that federal common law applies both to
interpret the provisions of an ERISA benefit plan and to resolve
"[i]ssues of relinquishment of rights and waiver" when such side
agreements affect the benefits provided by an ERISA plan, seeRodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 585,
587 (lst Cir. 1993). See also Smart v. Gillette Co. Long-Term
Disability Plan, 70 F.3d 173, 178 (lst Cir. 1995). Although state
law principles are reflected in the federal common law, seeRodriguez-Abreu, 986 F.2d at 585, state law is itself preempted by
ERISA in the context of interpreting employee benefit plans, see 29
U.S.C. 1144(a); Ingersoll-Rand Co. v. McLendon, 498 U.S. 133,
138-39 (1990). The relevant federal substantive law includes "the
`common-sense canons of contract interpretation'" derived from
state law, see Rodriguez-Abreu, 986 F.2d at 585 (internal citations
omitted), including the teaching that "contracts containing
unambiguous language must be construed according to their plain and
natural meaning," Smart, 70 F.3d at 178.
 Because this case involves the release of ERISA benefits,
the district court erred in utilizing state law. As we shall
explain below, however, this error did not alter the outcome of the
case. Indeed, Morais would not be entitled to any advantage
afforded by federal law because he relied entirely on Rhode Island
contract principles in his arguments to the district court. It is
black letter law that issues not raised in the district court are
waived, see, e.g., Sammartano v. Palmas del Mar Properties, Inc.,
161 F.3d 96, 97 (lst Cir. 1998) ("`[A] party is not at liberty to
articulate specific arguments for the first time on appeal simply
because the general issue was before the district court.'")
(quoting United States v. Slade, 980 F.2d 27, 31 (lst Cir. 1992)),
and we typically would reject an appellant's request that we use a
newly offered theory to analyze his case on appeal. We are,
however, permitted to affirm a district court's grant of summary
judgment on any ground supported by the record. Id. at 97 n.2. 
Because federal law unquestionably governs this case, and because
that law leads to the same result obtained by the magistrate judge,
we choose to consider the particulars surrounding the Settlement
Agreement using federal law principles. Fallick reports that ten circuits have read into the
statute an exhaustion of administrative remedies requirement for
contract-based claims. See 162 F.3d at 418 n.4 (citing cases).
 Our focus is the Settlement agreement, which the district
court held to be a complete bar to Morais' claim to higher
benefits. In reviewing a district court's grant of summary
judgment, we scrutinize the record de novo and in the light most
favorable to the party opposing the motion, indulging all
reasonable inferences in that party's favor. American Airlines,
Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 116 (lst Cir. 1998). The
non-movant, however, cannot simply rest on unsworn allegations; he
"must establish a trial-worthy issue by presenting `enough
competent evidence to enable a finding favorable to the nonmoving
party.'" Id. (internal citations omitted).
 Morais now argues that the Agreement must be given the
"heightened scrutiny" that federal precedents require for waivers
of ERISA pension benefits, see Rodriguez-Abreu, 986 F.2d at 587.
Under this law, courts are obligated to "scrutinize an ostensible
waiver with care in order to ensure that it reflects the purposeful
relinquishment of an employee's rights." Smart, 70 F.3d at 181. 
To determine whether a waiver is "knowing and voluntary," a court
must examine the totality of the circumstances. Id. We have found
helpful in this endeavor a set of six factors identified by the
Second Circuit in Finz v. Schlesinger, 957 F.2d 78, 82 (2d Cir.
1992).
 Morais contends that the record reveals a significant
factual dispute concerning whether he freely and knowingly gave up
his pension claims through the Agreement. He emphasizes in
particular that he was on medication that impaired his judgment
when he signed the document, that he was a common laborer with an
eighth grade education confronting the company president, and that
he was expected to sign the Agreement when it was presented to him
without the opportunity for him to obtain advice from an attorney
or any other independent source. These assertions implicate four
of the six Finz factors: the plaintiff's education and business
sophistication; the roles of employer and employee in determining
the content of the waiver; the time plaintiff had to study the
agreement; and whether plaintiff had independent advice.
 The difficulty for Morais is that, on its face, the
Agreement unambiguously speaks to at least two of these concerns. 
The document states that Morais consulted with attorneys and union
officials "and has arrived at the decision to execute this
Agreement after such consultation." The Agreement thus both
explicitly states that Morais had independent advice and implicitly
states that he had access to the substance of the Agreement if
not the document itself sufficiently in advance to discuss it
with others.
 In the face of such unambiguous language, it would
require a substantial departure from basic contract interpretation
principles for us to validate Morais' self-serving effort, years
later, to generate a factual dispute by asserting that he was
isolated from all advisors and pressured into signing the
Agreement. "As a general rule, a court should not consider
extrinsic evidence to give meaning to a contract unless the
contract's terms are vague or ambiguous. . . . In no event may
extrinsic evidence be employed to contradict explicit contract
language or to drain an agreement's text of all content save ink
and paper." Smart, 70 F.3d at 179-80. Giving heightened scrutiny
to ERISA waivers cannot mean abandoning these important principles,
which are designed to preserve the integrity of contracts. Rather,
when unambiguous language in the challenged waiver document
directly refutes an employee's representation regarding the
circumstances surrounding the waiver, the contract logically must
take precedence, at least in the absence of competent evidence of
the employee's incapacity at the time he signed the document. As
we discuss infra, Morais failed to provide such evidence. His
claim that he lacked independent advice is therefore without
weight.
 Unquestionably, the balance tips in the other direction
with respect to the "education and business sophistication" factor. 
Morais' position as a laborer, and his lack of a high school
education, put him at a presumed disadvantage in negotiating with
the president of the company. This discrepancy in sophistication,
however, is the very reason that advisors are crucial; the
imbalance is neutralized by the fact that Morais as stated in the
Agreement had outside guidance, including, notably, union
representatives whose primary function is to equalize the mismatch
between the employer and an individual employee. As for the
fourth of the factors listed above the roles of the employer and
employee in determining the content of the Agreement the record
reveals little. Although the document was prepared by the company,
there is neither evidence about how its contents were developed nor
evidence suggesting that the terms were unfair.
 The remaining two Finz factors the Agreement's clarity
and the consideration weigh heavily in favor of the Agreement's
validity. Most of the document, which was only one page in length,
is reproduced above, see supra at 3 & n.7. The language is not
challenging, even for someone with only an eighth-grade education,
and it clearly discharges Central Beverage Corp., the Plan, and the
Plan administrator from "all claims or causes of action whatever"
arising out of his retirement "and the calculation of his
disability pension."
 The consideration, $5,000, is a substantial sum. 
Although Morais' attorney stated at the summary judgment hearing
that the amount in dispute was $25,000, it appears unlikely that
Morais' claim would have succeeded. His basic contention was that
his lump sum workers compensation payment should have offset his
monthly disability pension for only a single month instead of being 
pro-rated over many months, which effected a long-term reduction in
his pension. The Plan states that
 [a]ny disability pension benefits payable for
 any month for which workers' compensation
 benefits are payable to a Participant shall be
 offset by the amount of such workers'
 compensation benefits.

Plan Section 4.2(c)(i)(3) (as amended), App. At 75. Morais
contends that the lump sum payment constituted benefits payable for
only one month. To the contrary, that payment represented the
benefits due him over a period of months, paid in advance. The
language neither technically nor logically supports Morais'
interpretation, which would allow a duplication of benefits that
the Plan provision seems designed to avoid. We are therefore
confident that the $5,000 settlement amount was ample
consideration, even if, as Morais alternatively contended, there
was a mistake in the computation.
 Nor do the other circumstances in this case provide a
basis for challenging the Settlement Agreement. The fact that
Morais suffered from various disorders, including depression, and
was on medication is insufficient, without more, to invalidate the
Agreement. See Rivera-Flores, 112 F.3d at 12-13. The note from
his doctor does not support Morais' assertion that he experienced
reduced mental capacity; the note simply lists his diagnoses and
medication, without any description of his symptoms or possible
side-effects from the medication. The record thus lacks "competent
medical evidence going to his capacity to execute the release," id.at 13.
 Morais also argues that the Agreement should not be
enforced because he misunderstood its scope and did not expect it
to cut off claims challenging the benefit reduction against the
Plan, as well as against his employer. Again, however, the
Agreement itself deflates his argument. It explicitly states that
all claims or causes of action against, inter alia, Central
Beverage, its officers, the Central Beverage Corp. Union Employees'
Supplemental Retirement Plan and its administrator are released and
"forever discharge[d]." In the face of such clear and complete
language, Morais' assertion of confusion is unavailing. See Smart,
70 F.3d at 179-80 & supra at 10.
 Ultimately, the question we must answer is whether the
record unequivocally demonstrates that Morais knew he was
relinquishing a benefit and acted voluntarily in doing so. Taking
the plain language of the document he signed in exchange for $5,000
at face value, such a conclusion is inevitable. We therefore
affirm the district court's judgment that the Settlement Agreement
bars this lawsuit.
 Affirmed.