Lewis LLOYD, Plaintiff–Appellant,

v.

BRUNSWICK CORPORATION, Mercury Marine, Peter Larson, David D. Jones, James Hubbard, John Russell, Robert McNaney, and Joseph Pomeroy, Defendants–Appellees.

Nos. 98–3648, 99–1753.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1999.

Decided June 22, 1999.

Lewis Lloyd (argued), Mifflin, PA, for Plaintiff–Appellant.

James R. Clark (argued), Foley & Lardner, Milwaukee, WI, for Defendants–Appellees.

Before CUDAHY, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

At the age of 60, and after 16 years as a patent attorney with the Brunswick Corpo-

ration, Lewis Lloyd was told he would be canned for, essentially, having (in the eyes of the company) a bad attitude. But instead of firing him outright, Brunswick let Lloyd exit gracefully—and, incidentally, with a heck of a lot more money than he would have gotten if he had been fired—under an early retirement program. There was a catch though: Lloyd had to waive his right to sue the company for age discrimination. He agreed (in writing), took the money, and walked away. Then he sued ... for age discrimination, no doubt making Brunswick rue the day it decided to offer him a deal. On this appeal, he asks us to support him in his efforts to wiggle out from under the waiver he signed.

Lloyd worked on and off for Brunswick and its Mercury Marine division beginning in 1976. In 1994 Lloyd was assigned to Mercury Marine's law department and began reporting to Joseph Pomeroy, Mercury Marine's general counsel. About 9 months later Pomeroy reviewed Lloyd's performance and really slammed him. Pomeroy's evaluation described a rigid employee unwilling to adapt to meet the department's expectations; one whose communication skills were sorely lacking; someone who refused to accept responsibility for anything, instead blaming others for his inability to get things done. Pomeroy sent a clear message: if Lloyd didn't do a quick about-face, he would be fired. In July 1995, when Lloyd (according to Pomeroy) still had made no effort to improve his attitude, Pomeroy told him he was out. Inexplicably—and perhaps unwisely, in hindsight—rather than firing Lloyd outright the company gave him the option of participating in its Voluntary Separation Program, which gave Lloyd the chance to leave with much more money than he would otherwise have been entitled to receive.

Lloyd and Brunswick memorialized their deal in two documents. The first, signed by Lloyd and David Jones, Mercury Marine's president, confirmed that Lloyd accepted certain benefits (including pension benefits for 16 years of service, medical insurance options, life insurance, severance, and stock options) in exchange for his agreement "to sign and return all the appropriate release forms provided you herewith and [to] take no legal action of any type for any reason against Mercury Marine or Brunswick Corporation [in] the future." Lloyd signed the letter on January 26.

The second document was a letter drafted by Jim Hubbard, Mercury Marine's senior vice president and chief of staff. Hubbard opened his letter by saying: "Because of the business circumstances surrounding your termination, Mercury Marine has decided to make available to you enhanced discretionary severance payments and benefit extensions beyond those you would presently be entitled under Mercury Marine Policy." Hubbard confirmed that Lloyd would get a lump sum severance payment, plus medical benefits. In return,

> Mercury Marine requests that you release any and all rights or claims arising out of your employment and its termination. Specifically, you agree: (a) that you are releasing any and all claims under the Age Discrimination in Employment Act, as amended by the Older Workers Benefit Protection Act, and the Wisconsin Fair Employment Act arising up to your last day worked and including the date of execution of this Letter Agreement; (b) that the consideration being received by you is greater than normally provided by Mercury Marine's policies to a person of your length of service and responsibility; (c) that you are hereby being advised to consult with an attorney of your choice prior to the execution of this Letter Agreement; (d) that you have been given forty-five (45) days from the date of presentment to decide whether or not to execute this Letter Agreement; and (e) that you have seven (7) days from the execution

of the Letter Agreement to revoke its execution.

Lloyd signed the second letter on January 26. And because he did so, Lloyd received approximately $231,000 more than he would have received had he not inked the deal.

Employees are free to waive their ADEA rights. Indeed, "[w]hen a worker within the class protected by the age discrimination law (age 40 and up) leaves his employment, it is common for the employer to try to obtain a waiver of the worker's right to bring a suit under that law." *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 669 (7th Cir.1998). Waivers of this sort are enforceable under the Older Workers Benefits Protection Act if they are offered knowingly and voluntarily. 29 U.S.C. § 626(f). At a minimum, the following conditions must be met: (A) the waiver must be part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual; (B) the waiver must specifically refer to rights or claims arising under this chapter; (C) the waiver must be limited to rights or claims arising before the waiver is executed; (D) the individual must be given consideration over and above what the individual already is entitled to; (E) the individual must be advised in writing to consult an attorney prior to executing the agreement; (F) the individual must be given 21 days to consider the agreement; and (G) the individual must be allowed to revoke the waiver within 7 days after its execution. *Id.* § 626(f)(1).

As the district judge correctly noted when he booted Lloyd's case on summary judgment, the waiver here tracked, almost exactly, these requirements, plus Brunswick gave Lloyd 45 days, rather than only 21, to consider the agreement. On appeal, Lloyd argues that the district court's decision was wrong for several reasons, none of which is persuasive. First, Lloyd argues that Hubbard's letter, which included the waiver, was not written in an easy-to-understand manner. But there is nothing unclear about the letter—it explains in no uncertain terms that Lloyd is getting a sweeter deal in exchange for waiving the very claims at issue in this lawsuit. On top of this, Lloyd is a lawyer. We have a hard time imagining that someone with a law degree would be unable to understand a simple letter deal like this.

Next, Lloyd argues that he could not have knowingly and voluntarily waived his rights because he didn't see Hubbard's letter before January 26, the day he signed it. But this is of no consequence. Each of the previous drafts—at least some of which were written by Lloyd—contained similar language. The earlier versions may not have expressly delineated the claims Lloyd would waive but they unambiguously required him to waive *all* claims arising out of his employment or termination, which would unquestionably include this ADEA claim. The letter gave Lloyd 45 days to consider the deal; he chose to sign on the spot. Even on appeal he offers nothing to suggest that the company forced him to do so. Lloyd suggests (without really stating) that he was coerced into waiving his claims because he knew he would lose his job if he didn't sign the letters. But Lloyd was going to lose his job whether or not he agreed to waive his claims. The only question was how much money he would walk away with.

Lloyd, perhaps correctly, thought he was getting tossed out because of his age. But the whole point of this mess is that he had a clear choice: he could get *some* money from Brunswick and pursue a discrimination claim, or he could waive the claim and get a lot more money. He chose the latter. His unsubstantiated assertion that he took this step with his eyes shut is not enough to invalidate his waiver. The judgment of the district court is affirmed.