Joseph W. COLE, Plaintiff,

v.

GAMING ENTERTAINMENT, L.L.C., dba Midway Slots and Simulcast, Defendant.

C.A. No. 01–648 GMS.

United States District Court, D. Delaware.

May 6, 2002.

Laurence V. Cronin, Smith Katzenstein & Furlow, Wilmington, DE, Mark B. Frost, Frost & Zeff, Philadelphia, PA, for plaintiff.

Jennifer C. Bebko, Richards Layton & Finger, Willmington, DE, Mark A. Saloman, Grotta, Glassman & Hoffman, Roseland, NJ, for defendant.

## MEMORANDUM AND ORDER

SLEET, District Judge.

## I. INTRODUCTION

On September 26, 2001, the plaintiff, Joseph Cole, filed a complaint alleging that his former employer, Gaming Entertainment ("Midway") discriminated against him on the basis of his age and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 6, *et seq.* Presently before the court is the defendant's motion to dismiss the complaint. Midway argues that the complaint should be dismissed because the plaintiff signed a waiver relinquishing his rights to bring any such claims. The plaintiff responds that the waiver was not knowing and voluntary as required by the Older Workers Benefits Protection Act, 29 U.S.C. § 626(f) ("OWBPA") and under applicable case law interpreting Title VII, because, *inter alia*, Midway did not give him sufficient time to review the release and the release did not advise him of his right to seek an attorney. Midway further argues that even if the release were not knowing and voluntary, Cole retained the consideration he was given upon signing the agreement, thereby ratifying the agreement. Cole responds that a void release cannot be ratified. Finally, the defendant argues that Cole must tender back the consideration before filing suit. Cole argues that since the release was void, he need not return the funds.

Upon review of the facts and the applicable law, the court finds that Cole's waiver was not knowing and voluntary. The court will, therefore, deny the defendant's motion to dismiss. The court will now briefly explain its reasoning.

## II. FACTS

Joseph Cole was employed by Midway on or about July 8, 1996. He was assigned to the security department. On July 8, 1997, he was promoted to a managerial position in the department.

In February or March of 2000, Paula Martin became Cole's supervisor. Cole alleges that Martin made sexual advances toward him, and that when the advances were rejected, he was subjected to unfavorable treatment, including a shift change. He further alleges that younger males and those males who acquiesced to the demands were treated more favorably.

On June 27, 2000, Layton Ward, another Midway supervisor, asked Cole if he could speak with him in his car. Ward told Cole that his position was being terminated. Cole stated that he was confused and upset by this news. Ward then took Cole to meet with Scott Saxton, a human resource representative. Saxton and Ward then presented Cole with a waiver form. The waiver reads, in pertinent part:

(3) Employee releases and forever discharges the Company from any and all

causes of action, claims, or demands up to the date of this agreement, known or unknown, including but not limited to those ... under federal, state, or local law[ ] or ordinances[ ] including, but not limited to, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 6, et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq ... and/or any and all other equivalent federal, state, [or] local statutes, laws, rules, and regulations pertaining to employment, harassment, discrimination on the basis of any protected classification ...

....

(12) Employee acknowledges and understands that this agreement covers only those claims arising prior to the date it is signed ...

(13) Employee acknowledges that he/she has been advised to consult with an attorney prior to executing this Agreement, and has either done so or has freely chosen not to do so. Employee understands that [ ]he is entitled to fully consider this Agreement for a period of up to 21 days. In addition, Employee understands that he/she may revoke this Agreement by submitting such revocation, in writing, to the Company within 7 days after his/her signing of the Agreement....

(D.I.4, Ex. 2.)

Although paragraph thirteen of the release explicitly states that the employee "is entitled to fully consider this agreement for a period of up to 21 days," Cole alleges (and the defendant does not dispute) that Ward and Saxton told him that he must return the signed waiver by the end of the next business day, or he would forfeit his severance pay. Furthermore, although paragraph thirteen also states that "plaintiff has been advised to consult with an attorney," Cole asserts (and the defendant does not refute) that neither Ward nor Saxton advised him to consult with an attorney. However, Ward and Saxton did not actively discourage the plaintiff from seeking counsel, either. After he was told that he had approximately twenty-four hours to sign the release, Cole went home and discussed the release with his wife. They agreed that they needed income. Cole returned to Midway four hours after his initial conversation with Ward and Saxton and, according to Cole, told Saxton that he was unclear as to the meaning of the release. Saxton did not provide further clarification. Nevertheless, Cole signed the release on July 27, 2000, four hours after being presented with the release and without consulting an attorney. On July 27, 1997, Joseph Cole was 47 years old and had completed one year of college credits in addition to his high school education.

Upon signing the release, Cole was presented with a check for $2,935.38. Paragraph ten of the release states that, "in the event Employee institutes a legal action against the Company relating to his/her employment with the Company or the termination thereof, Employee agrees to repay the Company any and all payments made by the Company under this Agreement less $100." (*Id.* at Ex.2.) Cole has not returned any of the funds to Midway.

### III. STANDARD OF REVIEW

In ruling on a motion to dismiss, the factual allegations of the complaint must be accepted as true. *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). Moreover, a court must view all reasonable inferences that may be drawn from the complaint in the light most favorable to the non-moving party. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991). A court should dismiss a complaint

"only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves,* 117 F.3d at 726; *Nami,* 82 F.3d at 65 (both citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## IV. DISCUSSION

### A. The Applicable Law

▬▬ Rights under both Title VII and the ADEA can be waived. *See Riddell v. Medical Inter–Insurance Exchange,* 18 F.Supp.2d 468, 471 (D.N.J.1998) (citing *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (as to Title VII claims)); *Coventry v. United States Steel Corp.,* 856 F.2d 514 (3d Cir. 1988) (as to ADEA claims). Nevertheless, any waiver must be knowing and voluntary. *Id.* (citations omitted). The burden is on the employer to establish that the waiver is knowing and voluntary. *See American Airlines, Inc. v. Cardoza–Rodriguez,* 133 F.3d 111, 117 (1st Cir.1998).

The standard for a knowing and voluntary waiver of claims under the ADEA has been codified in the OWBPA. The OWBPA states that to determine the voluntariness of a waiver, the court must consider whether:

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this chapter;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consider-

ation in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement ...

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired ...

29 U.S.C. § 626(f)(1)(A)-(G).

The standards for voluntariness under Title VII have not yet been codified. Nevertheless, prior to the enactment of the OWBPA, the Third Circuit noted that the following factors could be used to determine voluntariness:

(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Martinez v. National Broadcasting Company,* 877 F.Supp. 219, 227 (D.N.J.1994) (citing *Cirillo v. Arco Chemical,* 862 F.2d 448, 451 (3d Cir.1988) (superceded by statute on other grounds)).[1]

---

1. The enactment of the OWBPA rendered the Third Circuit's totality of the circumstances

## B. Was Cole's Waiver Valid?

 The standards for voluntariness under Title VII and the ADEA are similar. Both require that the waiver language refer directly to the statutes in question. Paragraph three refers to both Title VII and the ADEA by name, thus satisfying that requirement. The court further finds that the release language, while not as plain as it could be, could reasonably be understood by someone with Cole's education and experience as waiving his right to bring discrimination claims, particularly in light of the fact that the ADEA and Title VII are discussed in the context of "federal, state, [or] local statutes, laws, rules, and regulations pertaining to ... harassment [and] discrimination." The court also finds that there was sufficient consideration given for the waiver. Furthermore, the release only waives the right to bring past claims, and does not bar claims for prospective activity. Finally, pursuant to the OWBPA, the release permits Cole to rescind the waiver within seven days. Nevertheless, the release is deficient because Cole was not clearly advised of his right to seek counsel and was not given a sufficient amount of time to review the release. He was also deprived him of a meaningful opportunity to negotiate the terms of the release.

### 1. The amount of time allotted to review the document

Under both the ADEA and Title VII, an employee must be afforded a reasonable amount of time to review the release before a waiver may be considered knowing and voluntary. *See* 29 U.S.C. § 626(f)(1)(A)-(G); *Martinez*, 877 F.Supp.

at 227. The OWBPA specifically states that an employee must be given twenty-one days to consider the waiver.

In the present case, the language of the release clearly states that Cole is entitled to a twenty-one day review period. Admittedly, therefore, the terms of the written release seem to comply with the provisions of the OWBPA. However, according to Cole, Ward and Saxton both informed him that he only had until the next day to sign the release. The defendant does not dispute this assertion. Thus, the defendant apparently concedes that its agents orally contradicted the written release. At the very least then, Midway's oral communication with Cole likely confused the situation. Even more likely, Ward and Saxton effectively countermanded the twenty-one day provision, thereby causing Cole to believe that he only had one day to execute the release. *See Wamsley v. Champlin Refining and Chemicals, Inc.*, 11 F.3d 534, 538 (5th Cir.1993) (denying summary judgment where there was a question of fact as to whether OWBPA time period had been "orally countermanded" by employer, thus rendering court "unable to conclude ... that Appellants' releases were 'knowing and voluntary' under the OWBPA"). The period for review was thereby effectively reduced from twenty-one days to one day.

Allowing one day to review a document of the type in question seems insufficient under either Title VII or the ADEA. The court has not found a single case holding that one day or the same day is sufficient time under either statute. *See Riddell*, 18 F.Supp.2d at 472 (noting that giving the employee only a few minutes to review document was insufficient). Furthermore,

test irrelevant for ADEA purposes. *See Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir.1997) ("Congress intended to occupy the area of ADEA releases and, in doing so, to supplant the common law ..."). However, there is no indication that the test is inappro-

priate in the Title VII context where Congress has not yet codified standards for voluntariness. Therefore, the court will employ the Third Circuit's totality of the circumstances test for the Title VII claims.

the fact that Midway did not "propose a deadline that might have alerted [Cole] that [he] had more time to make his decision" weighs heavily in favor of finding that Cole was not given adequate time. *Id.* Of course, if Cole had signed the release on July 27, but the defendant did not instruct him to do so, the court might reach a different result. *See Lloyd v. Brunswick Corp.,* 180 F.3d 893, 895 (7th Cir.1999) (OWBPA requirements met where plaintiff signed release "on the spot" although he was given more time); *Kendrick v. Kmart Corporation,* No. 99–73367, 2000 WL 246582, at *2 (E.D.Mich. Feb.25, 2000) (OWBPA not violated where employee signed release on the same day, but he was not instructed to do so). However, those are not the facts of this case. By limiting Cole's review to one day, Ward and Saxton effectively "rushed" the plaintiff into signing the document. The court therefore finds that the time allotted for review was insufficient.

### 2. The right to seek counsel

■ Waivers under both the ADEA and Title VII require that an employee be advised of the right to seek counsel. *See* 29 U.S.C. § 626(f)(1)(A)-(G); *Martinez,* 877 F.Supp. at 227. Paragraph 13 of the release states that the "[e]mployee acknowledges that he/she has been advised to consult with an attorney prior to executing this Agreement." The court finds that this language is insufficient to satisfy the voluntariness requirement. First, although paragraph 13 makes reference to seeking counsel, it does not use any verbs of command or direction to "caution, warn, or recommend" that the employee consult an attorney. *See American Airlines,* 133 F.3d at 118 ("To advise is to 'caution,' 'warn,' or 'recommend.'"). Rather, the release uses passive language that requires the employee to infer the right to discuss the release with an attorney. Asking the employee to make such an inference is

insufficient under current case law. *Compare id.* at 117–18 (noting that release did not "'specifically advise the employees to consult with an attorney prior to executing the release' for OWBPA purposes where it merely stated 'I have had reasonable and sufficient time and opportunity to consult with an independent legal representative of my own choosing before signing this Complete Release of All Claims.'") *with Cirillo,* 862 F.2d at 450 (approving release language which stated "you may also want to discuss the following release language with your lawyer.").

Second, the release language might have met the OWBPA and Title VII standards if either Ward or Saxton had advised Cole of his right to counsel as contemplated by the release language. However, Midway does not dispute that Cole was never orally advised of his right to have an attorney review the release. *See Riddell,* 18 F.Supp.2d at 473 ("The important consideration ... is whether [the employee] was encouraged to consult an attorney.") (citing *Cirillo,* 862 F.2d at 454). For these reasons, the court must conclude that the release did not properly advise Cole of his right to counsel.

### 3. The opportunity to negotiate.

■ "The ability to negotiate suggests that the atmosphere surrounding the signing of the release was not oppressive and thus indicates a voluntary waiver." *Riddell,* 18 F.Supp.2d at 473–74. Negotiation is generally typified by the employee's opportunity to request the addition or deletion of certain release terms. *See id.* at 474 (noting that employee's request for additional pay could be considered attempt at negotiation). In the present case, the release is "boilerplate" and is not personalized to Cole in any meaningful way. There are no facts to indicate that Cole ever suggested that the terms of the re-

lease be modified. Moreover, the record does not reveal that Ward or Saxton gave Cole an opportunity to add his input to the release. Additionally, the fact that they gave Cole only until the end of the next day to review the release militates against a finding that Cole was given an opportunity to negotiate the release in a non-coercive environment. Since there is no evidence to the contrary, the court concludes that no negotiations occurred. Given the circumstances under which Cole alleges, and Midway apparently concedes, the release was presented, the absence of any negotiation weighs against a finding that Cole's waiver was knowing and voluntary.

### C. Must Cole Tender Back the Consideration for the Release?

Midway argues that even if the waiver signed by Cole was deficient, Cole's failure to return—or "tender back"the consideration provided in exchange for the waiver amounts to a ratification of the agreement. Tender-back and ratification are two separate, but closely related, concepts. *See Rangel v. El Paso Natural Gas Co.*, 996 F.Supp. 1093, 1099 (D.N.M.1998). Tender-back refers to the specific method for ratifying releases. *See id.* ("The 'tender back' requirement is an application to releases of the generally applicable ratification doctrine.") (citations and internal quotes omitted). Tender back can, therefore, be viewed as a subset of the ratification doctrine.

■ The defendant concedes that tender back is not an issue under the ADEA because an invalid waiver under the OWB-

PA cannot be ratified and need not be tendered back. *See Long v. Sears Roebuck & Co.*, 105 F.3d 1529 (3d Cir.1997). The defendant argues, however, that Cole's Title VII claims are barred because there are no impediments to ratification or tender back in that statute.

Although the defendant cites several cases in support of its proposition, none of the cases are from the Third Circuit.[2] Indeed, although the Third Circuit has not directly addressed whether Title VII releases may be ratified or tendered back, in *Long v. Sears Roebuck & Co.*, which held that releases under the ADEA could not be ratified or tendered back, the Circuit stated that:

[C]ourts have regularly applied the analysis in *Hogue* [*v. Southern R. Co.*, 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968)] to reject tender requirements in lawsuits brought under a variety of federal remedial statutes.[3] It is impossible to view the ADEA as anything other than a federal remedial statute. The ADEA was enacted in order to further the dual goals of compensating discrimination victims and deterring employers from practicing discrimination.

*Id.* at 1541.

Although the issue has arisen infrequently, courts have used the language in *Long* to support a conclusion that releases under Title VII should also be exempt from the tender back requirements. *See Rangel*, 996 F.Supp. at 1098 ("The Second, Third, and Ninth Circuits have all suggested that federal policies and statutes relating to anti-discrimination should override

**2.** The defendant cites *Fleming v. United States Postal Serv. AMF O'Hare*, 27 F.3d 259, 260–61 (7th Cir.1994); *O'Shea v. Commercial Credit Corp.*, 930 F.2d 358, 362–63 (4th Cir.1991); *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217, 220 (5th Cir.1991); *EEOC v. American Express Pub. Corp.*, 681 F.Supp. 216, 219 (S.D.N.Y.1988).

**3.** The *Hogue* Court held that tender back and ratification requirements were inapplicable to releases of claims under the Federal Employers' Liability Act. *See Hogue*, 390 U.S. at 518, 88 S.Ct. 1150.

traditional principles of contract law, such as the tender back rule, and should render those principles inapplicable.") (citing *Long,* 105 F.3d 1529) (further citations omitted). The court is persuaded by that analysis.

In *Long,* the Third Circuit stated that the tender back doctrine should be inapplicable to "a variety of federal remedial statutes." *Long,* 105 F.3d at 1541. Clearly, Title VII is a federal remedial statute, "created precisely to combat a deficiency in the market, namely inappropriate discrimination, which had the effect of placing parties in unequal bargaining positions." *See Rangel,* 996 F.Supp. at 1097. Thus, both Title VII and the ADEA have the similar goal of preventing discrimination. Moreover, the ADEA and Title VII share similar substantive provisions, as Title VII was the model for the ADEA. *See id.* Given the Third Circuit's broad statement that tender back should not be applied to "federal remedial statutes" such as Title VII, and its conclusion that tender back is not applicable to the ADEA—a similar statute—the court finds it is likely that the Third Circuit would not subject a Title VII release to the tender back or ratification doctrines.[4]

█ Even if the Third Circuit does not decide that money given in consideration of a void release must be tendered back, the defendant will not prevail. Consideration was given for the release of all claims. The consideration amount was not divided between the various claims. Thus, the same consideration was given for both the ADEA claims and the Title VII claims. The consideration for the waiver of the ADEA claims cannot be separated from the consideration given for the release of the Title VII claims. Since the consideration cannot be separated, and the consideration for the claims under the ADEA need not be tendered back, Cole need not tender back the consideration as a prerequisite to pursuing his Title VII claim. *See id.* at 1098 (noting that where claims are asserted under both the ADEA and Title VII, tender back is not appropriate) (citing *Blackwell v. Cole Taylor Bank,* No. 96C0902, 1997 WL 156483, at *3 (N.D.Ill. Mar.31, 1997)).[5] However, if Cole is successful on the merits of his claims, it may be appropriate to reduce any monetary recovery by the amount of consideration received for the waiver. *See id.* at 1099 (noting that where consideration could not be separated, "the preferable way of handling this case is to offset the amount [plaintiff] received for severance pay from [defendant] against any monies he recov-

---

**4.** The court notes that other circuits have reached the opposite conclusion on this issue. Those courts have primarily focused on the fact that the standard for voluntariness under the OWBPA is codified whereas the standard under Title VII is not. The court is not persuaded by this non-binding authority. First, in *Long,* the Third Circuit did not place great weight on the OWBPA's codification of standards. In fact, it is mentioned only in a footnote. *See Long,* 105 F.3d at 1540 n. 20. Second, in finding the codification immaterial, the *Rangel* court stated, "Although it is true that Title VII, unlike the OWBPA, does not have provisions mentioning specifically waivers and/or releases, the statutory goals of the two statutes are very similar in that the

objectives of both are to expand employment opportunities and to combat workplace discrimination ... It would appear contrary to Congressional intent to apply a free market approach in interpreting a statute aimed at fighting the market deficiency of improper discrimination." *See Rangel,* 996 F.Supp. at 1096, 1098. Like the *Rangel* court, this court is persuaded that the purposes of Title VII would be eroded if they were made subject to the tender back and ratification doctrines.

**5.** The *Blackwell* court stated, "If allocation is not possible, then logic suggests that either all of the consideration must be tendered or none of it."

ers in this case"). *See also Blackwell,* 1997 WL 156483, at *3 (same).

### D. Did Cole Ratify the Release?

"Ratification means confirmation and acceptance of a previous act, thereby making it valid from the moment it was done." *Rangel,* 996 F.Supp. at 1099. The analysis of the tender back and ratification doctrines are very similar. *See id. See also Long,* 105 F.3d at 1542–43, 1543 n. 20 (referring to "tender-ratification" and "ratification-tender back"). Given the similarities of the two doctrines, and the court's conclusion that Cole need not tender back the consideration offered for the void release, the court holds that Cole could not, as a matter of law, ratify the release.

■ Even if the court were persuaded that Cole could ratify the release, the court holds that the facts do not demonstrate that he did. The defendant's only evidence on this point is the fact that Cole retained the consideration. Although this fact may imply an intent to ratify, the court also notes that Cole hired an attorney and filed a charge with the EEOC in October 2000, a short time after signing the release. Such behavior is "discordant with ratification." *Id.* (refusing to grant summary judgment on ratification issue where plaintiff filed charge with EEOC within weeks of signing release). Given the conflict between the retention of the benefit and the retention of counsel shortly thereafter, the court finds that on the current record, Cole did not demonstrate a clear intent to ratify the release. *See id.* (concluding that filing of EEOC charge militated against a finding of ratification). Therefore, the court declines to dismiss the complaint on this ground at this time.

### V. CONCLUSION

For the foregoing reasons, the court concludes that Cole's waiver was not knowing and voluntary. Thus, his claims under the ADEA and Title VII are not barred. Additionally, the court finds that Cole need not tender back the consideration given for the release. Finally, Cole's retention of the consideration, in light of his subsequent behavior, was insufficient to constitute ratification of the release. The defendant's motion to dismiss is therefore denied.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The defendant's Motion to Dismiss (D.I.3) is DENIED.