Gary A. THIESSEN et al., Plaintiffs,

v.

GENERAL ELECTRIC CAPITAL CORPORATION, d/b/a GE Capital, and Montgomery Ward Credit Services, Inc., f/k/a Monogram Retailer Credit Services, Inc., Defendants.

No. 96–2410–JWL.

United States District Court,
D. Kansas.

Nov. 8, 2002.

Bert S. Braud, Dennis E. Egan, The Popham Law Firm, P.C., Kansas City, MO, John M. Klamann, Dirk L. Hubbard, Klamann & Hubbard, P.A., Overland Park, KS, for plaintiffs.

Brian J. Finucane, Jennifer L. Robinson, Bioff Finucane Coffey Holland & Hosler LLP, Kansas City, MO, Glen D. Nager, Jones, Day, Reavis & Pogue, Washington, DC, Steven T. Catlett, Chicago, IL, Matthew W. Lampe, Columbus, OH, Sharon D. Hess, San Antonio, TX, for defendants.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff Gary Thiessen, an employee of defendants, filed suit under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., alleging that he and other similarly situated employees had been adversely affected by a pattern or practice of age discrimination implemented by defendants. This case has been certified as a collective action and the trial of plaintiffs' pattern-or-practice claim is scheduled to begin in January 2003.

Defendants now seek summary judgment on the claims of four individual plaintiffs-Terry Grisham, Delilah Hicks, Melva Heid and Robert Marsonette-on the grounds that these individuals signed valid releases expressly waiving any and all age discrimination claims. In response, plaintiffs contend that their waivers did not comply with the requirements of the Older Workers Benefit Protection Act ("OWB-

PA"), 29 U.S.C. § 626(f), and, in any event, that their waivers were not otherwise "knowing and voluntary."

As explained in more detail below, defendants' motion as to the claims of Terry Grisham is denied in light of factual issues concerning whether Mr. Grisham was advised in writing to consult with an attorney prior to executing his release, *see* 29 U.S.C. § 626(f)(1)(E); defendants' motion as to the claims of Delilah Hicks is denied in light of the court's conclusion that, as a matter of law, Ms. Hicks' waiver is invalid in that it failed to specifically refer to the ADEA, *see id.* § 626(f)(1)(B); defendants' motion as to the claims of Melva Heid is denied in light of factual issues concerning whether defendants sought Ms. Heid's waiver of rights in connection with an exit incentive or other employment termination program; and defendants' motion as to the claims of Robert Marsonette is denied in light of factual issues concerning whether Mr. Marsonette, in consideration for signing the waiver, received something to which he was not otherwise entitled, *see id.* § 626(f)(1)(D). Moreover, the court has declined to address plaintiffs' argument that their releases were procured through fraud; this argument will be addressed, if necessary, at a later stage of the proceedings.

## I. Factual Background[1]

Plaintiffs Terry Grisham, Delilah Hicks, Melva Heid and Robert Marsonette are all former employees of Monogram Retail Credit Services, Inc. ("MRCSI"), subsequently renamed Montgomery Ward Credit Services, Inc., and all signed waivers in which they released defendants from claims of age discrimination. In February 1994, Ms. Hicks' supervisors encouraged her to take "voluntary termination" in light of Ms. Hicks' recent demotion and poor performance evaluations. Ms. Hicks, believing that she no longer had the support of her supervisors, accepted the recommendation of her supervisors. That same month, Ms. Hicks signed a release in which she waived her claims of age discrimination. Ms. Heid and Mr. Marsonette ended their employment relationships with MRCSI in December 1995. Ms. Heid was laid off at that time and Mr. Marsonette, according to plaintiffs, was "forced out" of the company. Mr. Marsonette signed a release in January 1996 and Ms. Heid signed a release in October 1996. Mr. Grisham resigned his employment (or, according to plaintiffs, was constructively discharged) in December 1996 and signed a release that same month.

Additional facts, related in the light most favorable to plaintiffs, the party against whom summary judgment is sought, will be provided as they relate to specific arguments and issues raised in the parties' papers.

## II. Summary Judgment Standard

The OWBPA explicitly places the burden on the party asserting the validity of a waiver of rights, such as a release, to demonstrate that the waiver was "knowing and voluntary." *See* 29 U.S.C. § 626(f)(3). To prevail on their motions for summary judgment, therefore, defendants must demonstrate that there is no genuine issue of material fact as to whether the releases complied with each of the section 626(f)

---

1. Plaintiffs have filed a motion to deem admitted (doc. # 522) their statements of fact contained in their memoranda in opposition to the various motions for summary judgment filed by defendants and currently pending before the court, including the motions resolved in this order. The court need not resolve plaintiffs' motion to deem admitted prior to resolving defendants' motions for summary judgment regarding the validity of the releases because the few facts that are pertinent to this motion for summary judgment are largely undisputed. Thus, plaintiffs' motion to deem admitted remains under advisement.

requirements and as to whether the releases were otherwise knowing and voluntary. *See American Airlines, Inc. v. Cardoza–Rodriguez,* 133 F.3d 111, 117 (1st Cir.1998) (citing *Griffin v. Kraft General Foods, Inc.,* 62 F.3d 368, 371–72 (11th Cir.1995)).

## III. Discussion

■ In 1990, Congress enacted the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), which amended the ADEA by limiting the manner in which an employee may waive the protections afforded under the ADEA and by mandating that any waiver of ADEA claims satisfy certain minimum requirements. In essence, when an employee signs a purported release of claims arising under the ADEA, that release will not bar an ADEA claim unless the release strictly complies with the statutory requirements of the OWBPA. The first issue presented by defendants' motions for summary judgment is whether the releases signed by Mmes. Hicks and Heid and Mssrs. Grisham and Marsonette pass this strict-compliance test.

■ The Tenth Circuit, moreover, has held that the statutory factors of the OWBPA are not exclusive and other circumstances, in addition to the express statutory requirements, may impact whether a waiver under the OWBPA is knowing and voluntary. *See Bennett v. Coors Brewing Co.,* 189 F.3d 1221, 1228 (10th Cir.1999). Under this "totality of the circumstances" approach, the Circuit requires district courts to look "beyond the contract language and consider all relevant factors in assessing a plaintiff's knowledge and the voluntariness of the waiver." *See id.* (quoting *Torrez v. Public Serv. Co. of N.M., Inc.,* 908 F.2d 687, 689 (10th Cir.1990)). Thus, even assuming a release satisfies the statutory minimum requirements, the court must nonetheless consider whether any "non-statutory circumstances such as fraud, duress, or mutual mistake may render an ADEA waiver not 'knowing and voluntary' under the OWBPA." *See id.* at 1229. The second issue, then, presented by defendants' motions is whether the releases signed by Mmes. Hicks and Heid and Mssrs. Grisham and Marsonette are knowing and voluntary under the totality of the circumstances.

## A. Whether the Releases Strictly Comply with the Requirements of the OWBPA

The OWBPA prohibits the waiver of ADEA claims if the waiver is not "knowing and voluntary." 29 U.S.C. § 626(f)(1). The statute provides that an ADEA waiver is not knowing and voluntary unless, "at a minimum," it complies with the requirements set out in the statute. *Id.* The statutory requirements are summarized as follows:

(1) the release must be written in a manner calculated to be understood by the employee signing the release, or by the average individual eligible to participate;

(2) the release must specifically refer to claims arising under the ADEA;

(3) the release must not purport to encompass claims that may arise after the date of execution;

(4) the employer must provide consideration for the waiver or release of ADEA claims above and beyond that to which the employee would otherwise already be entitled;

(5) the employee must be advised in writing to consult with an attorney prior to executing the agreement;

(6) the employee must be given at least 21 days within which to consider the agreement or 45 days to consider signing if the waiver is offered in connection with an "exit incentive or other employment termination;"

(7) the release must allow the employee to revoke the agreement up to 7 days after signing; and

(8) if the release is offered in connection with an exit incentive or group termination program, the employer must provide information relating to the job titles and ages of those eligible for the program, and the corresponding information relating to employees in the same job titles who were not eligible or not selected for the program.

See 29 U.S.C. § 626(f)(1)(A)-(H). The OWBPA also mandates that the release not affect the EEOC's rights and responsibilities to enforce the ADEA and further states that "[n]o waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the Commission." See id. § 626(f)(4).

### 1. Section 626(f)(1)(B)

■ Among the requirements of the OWBPA is the requirement that a waiver "specifically refer[ ] to rights or claims arising under this chapter." 29 U.S.C. § 626(f)(1)(B). The release signed by Delilah Hicks makes no reference to the ADEA and it is for this reason that Ms. Hicks opposes defendants' motion for summary judgment. In relevant part, the release signed by Ms. Hicks states:

> The foregoing release includes, but is not limited to, *any claim of discrimination on the basis of* race, sex, religion, marital status, sexual orientation, national origin, handicap or disability, *age*, veteran status, special disabled veteran status, citizenship status; any other claim based on a statutory prohibition; any claim arising out of or related to an express or implied employment contract, any other contract affecting terms and conditions of employment, or a covenant of good faith and fair dealing; any tort claims and any personal gain with re-

spect to any claim arising under the quitam provision of the False Claims Act, 31 U.S.C. 3730.

Release ¶ 8(a) (emphasis added). The release, then, does not mention the ADEA in any respect and refers only to a "claim of discrimination on the basis . . . age." According to Ms. Hicks, the release is invalid under the OWBPA because it does not specifically direct Ms. Hicks to the ADEA. The court agrees.

While they have not expressly addressed the issue, both the Supreme Court and the Tenth Circuit have suggested that, in order to comply with the OWBPA, a·release must specifically refer to the ADEA-not just age discrimination claims in general. See *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (noting that Entergy did not comply with the OWBPA in that "the release made no specific reference to claims under the ADEA"); *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1228 (10th Cir.1999) (summarizing statutory requirements and noting that the "release must specifically refer to claims arising under the ADEA").

Other cases are in accord. For example, the Fourth Circuit has held that a release that specifically mentioned the "Age Discrimination in Employment Act as amended by the Older Workers Benefit Protection Act" satisfied the OWBPA's requirement that it "specifically refer to claims arising under the ADEA." See *Adams v. Moore Business Forms, Inc.*, 224 F.3d 324, 326, 328 (4th Cir.2000). The Fifth Circuit, in *Blakeney v. Lomas Information Systems, Inc.*, 65 F.3d 482, 484 n. 1 (5th Cir.1995), noted that it was "undisputed" that the release at issue failed to comply with section 626(f)(1)(B) where the release did not specifically reference the ADEA and, instead, referred only to "rights under federal, state or local laws prohibiting discrimination." See also

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith,* 59 F.Supp.2d 1060, 1063 (S.D.Cal. 1999) (arbitration clause contained in Form U–4 did not bar judicial resolution of ADEA claims where the waiver did not "specifically advise him that he was waiving his rights and claims under the ADEA").

These cases, of course, are entirely consistent with the plain language of the statute itself, which states that a waiver is not knowing and voluntary unless, *inter alia,* "the waiver specifically refers to rights or claims arising under this chapter." The cases are also consistent with the intent of Congress as reflected in the legislative history of the OWBPA:

> The waiver must be part of a written settlement agreement which specifically ·identifies that rights and claims under the ADEA are being waived. This degree of clarity and specificity increases the chances that individuals will know their rights upon execution of a waiver.

S.Rep. No. 101–263, at 32 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1538. The purpose, then, of requiring a specific reference to the ADEA is to enable the individual presented with a waiver of rights to refer to the statute in an effort to learn more about the individual's rights under the statute. Bearing in mind that the OWBPA's requirements are to be "strictly interpreted to protect those individuals covered by the Act," S.Rep. No. 101–263, at 31 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1537, the court concludes that Ms. Hicks' release is invalid as it does not contain any reference to the ADEA. Defendants' motion for summary judgment with respect to Ms. Hicks' claims is denied; Ms. Hicks' release does not bar any of her ADEA claims.[2]

**2.** Section 626(f)(1)(D)

According to the OWBPA, a waiver is not valid unless, *inter alia,* "the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled." 29 U.S.C. § 626(f)(1)(D); *see also* S.Rep. No. 101–263, at 33 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1538 ("The ADEA rights and claims may be waived only in exchange for consideration that exceeds what the individual already was entitled to by contract or law."). Ms. Heid and Mssrs. Grisham and Marsonette each contend that defendants' motions for summary judgment must be denied in light of material factual issues concerning whether these individuals received consideration above and beyond that to which they were already entitled. .

 In their depositions, both Ms. Heid and Mr. Grisham admit that, in exchange for signing the waiver, they received consideration above and beyond that to which they were otherwise entitled. Ms. Heid, for example, testified that defendant, in addition to providing Ms. Heid with the "standard layoff package," allowed Ms. Heid to keep her computer. Mr. Grisham testified that, in exchange for Mr. Grisham signing the waiver, defendants agreed to pay him for the vacation time that he would have accrued the next year-a payment that Mr. Grisham agreed was "atypical." He further admitted that he had not earned that vacation pay and that he was not otherwise entitled to payment for that vacation time. Mr. Grisham testified that he also received the company's standard layoff package. Based on these undisputed facts, the court concludes that defendants complied with section 626(f)(1)(D) with respect to the releases of

**2.** Because the court concludes as a matter of law that Ms. Hicks' release is invalid under the OWBPA, it declines to address Ms. Hicks' remaining arguments concerning the invalidity of her release.

Ms. Heid and Mr. Grisham. *See Wastak v. Lehigh Valley Health Network*, No. CIV.A. 00–4797, 2002 WL 468709, at *4 (E.D.Pa. Mar. 27, 2002) (granting summary judgment in favor of defendant on validity of release in part because plaintiff acknowledged that he was not otherwise entitled to money received in exchange for waiver).

Defendants, however, have not met their burden of showing the absence of a material factual issue concerning whether Mr. Marsonette's release complied with section 626(f)(1)(D). In their papers, defendants have itemized for the court specific payments made to Mr. Marsonette upon Mr. Marsonette's signing of the waiver. Defendants further contend that these payments constitute consideration above and beyond that to which Mr. Marsonette was entitled because Mr. Marsonette, having voluntarily resigned his employment, was not "otherwise entitled" to anything at all.

▉ Defendants' evidence, however, does not support their contention that an employee who voluntarily resigns his or her employment is not entitled to any payments from defendants. The evidence referenced by defendants in support of this contention, an affidavit provided by Jerry Glover, states only that Mr. Glover told Mr. Marsonette when Mr. Marsonette approached him about resigning that he "was not the appropriate person to talk to concerning a 'package,' and that [he] was unaware of any 'package' available to those who voluntarily separate from the company." Glover Aff. ¶ 22. The fact that Mr. Glover was unaware of any particular package offered to employees who resign does not establish as a matter of law that defendants did not provide standard packages to those employees or a subset of those employees. Moreover, other evidence in the record before the court suggests that defendants' practice or policy was to provide certain employees who vol-

untarily resigned-particularly those nearing retirement age-with standard severance packages and that Mr. Marsonette received no more than standard separation benefits. In short, factual issues exist with respect to whether the consideration given in exchange for Mr. Marsonette's release exceeds the value of the benefits to which Mr. Marsonette was already entitled.

3. Section 626(f)(1)(E)

The OWBPA also provides that a waiver is not valid unless the individual executing the release "is advised in writing to consult with an attorney prior to executing the agreement." 29 U.S.C. § 626(f)(1)(E). Ms. Heid and Mssrs. Marsonette and Grisham each contend that their individual releases did not adequately advise them to consult with an attorney prior to signing the releases. As set forth below, the court concludes that fact issues exist concerning whether defendants complied with section 626(f)(1)(E) with respect to Mr. Grisham's release and, thus, summary judgment is denied with respect to Mr. Grisham's claims. Defendants, however, did comply with section 626(f)(1)(E) with respect to Ms. Heid's and Mr. Marsonette's releases.

▉ The court begins with the releases signed by Ms. Heid and Mr. Marsonette. Those releases both contain the following provision: "[T]he Company hereby advises the Employee in writing to consult with a lawyer before signing the Agreement." This language tracks the language of section 626(f)(1)(E) and is consistent with language approved by at least one other court. *See Raczak v. Ameritech Corp.*, 103 F.3d 1257, 1260 (6th Cir.1997) (pages of waiver forms were clearly labeled at the top with the words "Please consult with an attorney before executing this document," satisfying section 626(f)(1)(E)).

Nonetheless, plaintiffs contend that defendants, to satisfy section 626(f)(1)(E), must have "actually cautioned or warned [plaintiffs] to discuss [their] situation with an attorney prior to signing the agreement." *See, e.g.,* Mr. Marsonette's Response at 20. In support of this argument, plaintiffs direct the court to one case-*Cole v. Gaming Entertainment, L.L.C.,* 199 F.Supp.2d 208 (D.Del.2002). In *Cole,* the plaintiff's release contained the following provision: "Employee acknowledges that he/she has been advised to consult with an attorney prior to executing this Agreement, and has either done so or has freely chosen not to do so." *Id.* at 211. Unlike the present-tense "hereby advises" language contained in the agreements of Ms. Heid and Mr. Marsonette, the language of the provision in *Cole* simply referenced prior advice (*i.e.,* "he/she has been advised") that allegedly had been given to the plaintiff. It was undisputed by the parties in *Cole,* however, that none of the defendant's agents had actually advised him to consult with an attorney. *See id.* In light of these undisputed facts, the *Cole* court held that

> the release language might have met the OWBPA ... standards if [defendant] had advised Cole of his right to counsel as contemplated by the release language. However, [defendant] does not dispute that Cole was never ... advised of his right to have an attorney review the release.... [T]he court must conclude that the release did not properly advise Cole of his right to counsel.

*Id.* at 214 (citations omitted).

By contrast, the language contained in the releases signed by Ms. Heid and Mr. Marsonette *presently* advises the employee to consult with an attorney prior to signing the agreement. Thus, the facts presented by Ms. Heid and Mr. Marsonette differ significantly from those presented in the *Cole* case. In the absence of any authority suggesting that the language contained in

the releases signed by Ms. Heid and Mr. Marsonette does not comply with section 626(f)(1)(E), and because that language tracks the language of the statute itself, the court rejects plaintiffs' argument that defendants have failed to comply with section 626(f)(1)(E) with respect to Ms. Heid's and Mr. Marsonette's releases.

The court turns, then, to the language contained in Mr. Grisham's release. In their papers concerning Mr. Grisham's claims, defendants represent to the court that Mr. Grisham's release "recites that 'the Company hereby advises the Employee in writing to consult with a lawyer before signing the [Release].'" Defendants' Br. at 10. Defendants, however, have materially misquoted the language of Mr. Grisham's release. Mr. Grisham's release does not contain the "hereby advises" language found in Ms. Heid's and Mr. Marsonette's releases. Rather, Mr. Grisham's release states that "the Company *advised* the Employee in writing to consult with a lawyer before signing this Agreement." Grisham Release at 1 (emphasis added).

The language of Mr. Grisham's release, then, suggests that defendants, at some previous time, advised Mr. Grisham in writing to consult with a lawyer; the release itself does not advise (nor does it purport to advise) Mr. Grisham to consult with a lawyer. *See* 29 U.S.C. § 626(f)(1)(E) (a waiver is not valid unless the individual executing the release "is advised in writing to consult with an attorney prior to executing the agreement"). In that regard, the past-tense "advised" language contained in Mr. Grisham's release is like the language of the release in *Cole*-a release that the court concluded was invalid in light of undisputed facts that the defendant had not previously advised Cole to consult with a lawyer as the release language suggested. In other words, the

provision in *Cole* was not factually accurate.

■ The court agrees with the *Cole* court that an employee should not be required to infer from a statement of historical fact ("the Company *advised* the Employee in writing to consult with a lawyer") that he or she is presently being advised to consult with an attorney.[3] This is particularly true as the primary purpose of the OWBPA is to ensure that waivers are clear and straightforward to the individual whose waiver of rights is sought. Moreover, this particular requirement of the OWBPA is not a difficult one for an employer to meet, as evidenced by the releases signed by Ms. Heid and Mr. Marsonette. In short, the court concludes that language contained in Mr. Grisham's release, standing alone, simply does not comply with the OWBPA's requirement that an employer advise the employee in writing to consult with an attorney prior to executing the release. That having been said, it remains to be seen whether defendants otherwise complied with section 626(f)(1)(E) by providing Mr. Grisham with prior written advice such that the statement contained in the release is factually accurate.[4]

### 4. Section 626(f)(1)(F)(ii) & (f)(1)(H)

It is undisputed that defendants provided Ms. Heid, Mr. Grisham and Mr. Marsonette with a period of 21 days to consider their respective releases. This 21-day period is mandated by the OWBPA for those waivers obtained in connection with individual separation agreements. *See* 29 U.S.C. § 626(f)(1)(F)(i). For waivers obtained in connection with an "exit incentive or other employment termination program," however, the OWBPA requires that the individual be given a period of at least 45 days to consider the agreement, *see id.* § 626(f)(1)(F)(ii), and further requires that the employer provide the employee with detailed information concerning the group termination program, *see id.* § 626(f)(1)(H). *See also* S.Rep. No. 101–263, at 32–34 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1538–40 (discussing distinctions between waivers obtained as part of individual separation agreements and those obtained as part of a group termination program).

It is undisputed that defendants did not provide Ms. Heid, Mr. Grisham or Mr. Marsonette with 45 days to consider their releases and that defendants did not provide these individuals with the information described in section 626(f)(1)(H). In their papers, Ms. Heid, Mr. Grisham and Mr. Marsonette each contend that their releases are invalid (or, at the very least, that factual issues exist regarding the validity of the releases such that defendants' motions must be denied) because Ms. Heid,

---

**3.** Defendants suggest in their papers that Mr. Grisham admitted in his deposition that he construed the release language as written advice to consult an attorney. A reading of the relevant deposition testimony, however, reveals that Mr. Grisham made no such admission; he simply accepted defendant's counsel's characterization of the provision after a lengthy colloquy on the subject. *See* Grisham Depo. at 38–42. In any event, even if Mr. Grisham did construe the release language as written advice to consult an attorney, such an admission is irrelevant in light of the court's conclusion that, as a matter of law, the language simply does not comport with the OWBPA.

**4.** It appears to the court that defendants did not provide Mr. Grisham with any prior written advice to consult with an attorney. Defendants have not suggested that such advice was provided and Mr. Grisham testified in his deposition that, in fact, he never received any prior written advice. Nonetheless, as plaintiffs have not filed a cross-motion for summary judgment on this issue and have not shown the absence of a material factual dispute, the court cannot conclude as a matter of law that Mr. Grisham's release is invalid.

Mr. Grisham and Mr. Marsonette were terminated in connection with an "exit incentive or other employment termination program" and, thus, were entitled to the 45-day consideration period and the information described in section 626(f)(1)(H).

The statute itself does not define "exit incentive" or "employment termination program" and very few cases have analyzed the meaning of these phrases. However, the legislative history, quoted below at some length, reflects Congress' thought that "recipients of the kind of standardized, often complex, take-it-or-leave-it severance offers tendered in connection with a reduction in force or other reorganization should have more time in which and information with which to decide whether to waive their ADEA rights than in the case of individually negotiated separations." *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 670 (7th Cir.1998) (citing S.Rep. No. 101–263, at 32). As the legislative history states:

> In the context of ADEA waivers, the Committee recognizes a fundamental distinction between individually tailored separation agreements and employer programs targeted at groups of employees. Individual separation agreements are the result of actual or expected adverse action against an individual employee. The employee understands that action is being taken against him, and he may engage in arms-length negotiation to resolve any differences with the employer.

> Group termination and reduction programs stand in stark contrast to the individual separation. During the past decade, in particular, employers faced with the need to reduce workforce size have resorted to standardized programs designed to effectuate quick and wholesale reductions. The trademark of involuntary termination programs is a standardized formula or package of employee benefits that is available to more than one employee. The trademark of voluntary reduction programs is a standardized formula or package of benefits designed to induce employees voluntarily to sever their employment. In both cases, the terms of the program generally are not subject to negotiation between the parties. In addition, employees affected by these programs have little or no basis to suspect that action is being taken based on their individual characteristics. Indeed, the employer generally advises them that the termination is not a function of their individual status. Under these circumstances, the need for adequate information and access to advice before waivers are signed is especially acute.

S. Rep. No. 101–263, at 32 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1537–38.

■ There are no facts in the record before the court indicating that defendants requested waivers from Mr. Grisham or Mr. Marsonette "in connection with an exit incentive or other employment termination program." Viewing the evidence in the light most favorable to Mr. Grisham, defendants placed Mr. Grisham on an unreasonable action plan based on his alleged poor performance and, thereafter, Mr. Grisham took some vacation time to "consider his options." Thereafter, Mr. Grisham advised defendants that he would not resign his employment but would not return to work because he could not meet the requirements of the unreasonable action plan. Only then did defendants approach Mr. Grisham with a settlement agreement and release providing for Mr. Grisham's separation from the company. These facts show only that defendants secured Mr. Grisham's waiver in connection with an individual separation agreement based on circumstances particular to Mr. Grisham-including purported concerns about Mr. Grisham's performance. For

this reason, defendants were required to provide (and it is undisputed that they did provide) Mr. Grisham with 21 days (as opposed to 45 days) to consider the agreement and were not required to provide Mr. Grisham with the information described in section 626(f)(1)(H).

Viewing the evidence in the light most favorable to Mr. Marsonette, the record reflects that defendants, in a purported effort to force Mr. Marsonette's resignation, removed Mr. Marsonette from significant assignments and otherwise stripped Mr. Marsonette of his authority and responsibility. Thereafter, Mr. Marsonette initiated discussions concerning his separation from the company and ultimately negotiated an individual severance package. The evidence demonstrates that the agreement was individually tailored to Mr. Marsonette after several discussions between defendants and Mr. Marsonette concerning an appropriate severance package. Mr. Marsonette sought the agreement in light of actual or perceived adverse actions taken against him. *See* S.Rep. No. 101–263, at 32 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1537 ("Individual separation agreements are the result of actual or expected adverse action against an individual employee."). In the absence of any evidence that the waiver was sought or obtained in connection with an exit incentive or a group termination, defendants were required to provide Mr. Marsonette with only 21 days to consider the agreement. In this respect, the release complies with the OWBPA.

In contrast, the court cannot resolve on summary judgment whether Ms. Heid's waiver was secured in connection with an exit incentive or other employment termination program. Ms. Heid's evidence, largely undisputed by defendants, shows that her position was eliminated pursuant to a reorganization or workforce reduction. Specifically, Ms. Heid was laid off when the department in which she worked was closed and the functions of that department were transferred to another facility. There is no indication that the termination of Ms. Heid's employment had anything to do with Ms. Heid's performance or any other individualized issue. While it appears that Ms. Heid was able to negotiate an individualized severance package, the court does not find this one factor dispositive, particularly as other evidence suggests she may have been permitted to do so because of her status as a manager of the department and because of the relatively small number of people affected by the reorganization. In short, factual issues exist concerning whether Ms. Heid waived her rights as part of an exit incentive or group termination program.

5. Section 626(f)(4)

In his opposition to defendants' motion for summary judgment, Mr. Grisham presents an additional argument that his release is not valid under the OWBPA. Specifically, Mr. Grisham contends that the language of his release interferes with his right to file charges with the EEOC and to participate in EEOC proceedings or investigations in violation of 29 U.S.C. § 626(f)(4). Section 626(f)(4) states as follows:

> No waiver agreement may affect the Commission's rights and responsibilities to enforce this chapter. No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceedings conducted by the Commission.

29 U.S.C. § 626(f)(4). The legislative history of the OWBPA indicates that Congress intended this provision "as a clear statement of support for the principle that the elimination of age discrimination in the workplace is a matter of public as well as

private interest" and that "[n]o waiver agreement may be permitted to interfere with the achievement of that goal." S.Rep. No. 101–263, at 35 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1541.

■ Mr. Grisham's release, unlike the releases signed by Ms. Hicks, Ms. Heid and Mr. Marsonette, contains a non-disparagement clause that prohibits Mr. Grisham from making or causing to be made "any statements that disparage, are inimical, or damage the reputation of the Company or any of its affiliates, agents, officers, directors, or employees."[5] *See* Grisham Release ¶ 11. This paragraph of the release further prohibits Mr. Grisham from making "such a communication" to "*anyone*, including but not limited to the media, public interest groups, and publishing companies." *See id.* (emphasis added). According to Mr. Grisham, while the primary purpose of this provision might be to prevent Mr. Grisham from talking to the media rather than to prevent Mr. Grisham from talking to the EEOC, the language of the provision is sufficiently broad such that Mr. Grisham would violate the provision if he did communicate with the EEOC.

The court has uncovered no cases addressing section 626(f)(4) in the context of the same or sufficiently analogous facts. However, in *Wastak v. Lehigh Valley Health Network,* No. CIV.A. 00–4797, 2002 WL 468709, at *6 (E.D.Pa. Mar. 27, 2002), the court rejected the plaintiff's argument that his release should be deemed invalid because it prevented him from filing a charge with the EEOC. While the court recognized that the OWBPA "prohibits waiver agreements from precluding individuals from filing a discrimination charge with the EEOC," the court nonetheless

held that the plaintiff's waiver was knowing and voluntary:

> [I]t is the filing of the ADEA ... claims that Defendant contests in the instant Motion, not the filing of the EEOC charge. The Plaintiff has not explained to the Court why the entire waiver that he knowingly and voluntarily entered into should be voided due to a provision that is inapplicable to the instant case. The Plaintiff's claims that his waiver was not knowing and voluntary, therefore, is without merit.

*Id.* Similarly, here, defendants are not contesting the filing of an EEOC charge or any communication with the EEOC and Mr. Grisham does not suggest that the non-disparagement clause has had any bearing on the proceedings in this case or in any way affected Mr. Grisham's rights under the OWBPA. In light of these circumstances, and in the absence of any authority suggesting otherwise, the court finds the *Wastak* decision persuasive.

Moreover, the statutory framework of the OWBPA reflects that section 626(f)(4) is not one of the minimum requirements for a knowing and voluntary waiver; those minimum requirements are enumerated in section 626(f)(1). Similarly, the language of section 626(f)(4)-in stark contrast to the language of section 626(f)(1)-in no way suggests that a waiver that restricts the right of an individual to communicate with the EEOC is automatically rendered invalid or that it may not be considered knowing and voluntary. For these reasons, too, then, the court is unwilling to conclude that an otherwise knowing and voluntary waiver would be invalid simply because the language of the waiver could be interpreted to interfere with the employee's right to

---

5. The releases of Ms. Hicks, Ms. Heid and Mr. Marsonette are not only devoid of a non-disparagement clause but also contain a provision that states "nothing herein shall pre- vent the Employee from communicating with or cooperating with any U.S. Governmental investigation." *See, e.g.,* Heid Release ¶ 6; Marsonette Release ¶ 10.

communicate with the EEOC when communications with the EEOC are simply not an issue in the litigation. In short, the court rejects Mr. Grisham's argument that his waiver is invalid because it violates section 626(f)(4).

### B. Whether the Releases are Knowing and Voluntary under the Totality of the Circumstances

Even assuming that the waivers signed by Ms. Heid, Mr. Grisham and Mr. Marsonette comply with the specific express requirements of the OWBPA, those releases are nonetheless not valid unless they are otherwise knowing and voluntary under the totality of the circumstances. *See Bennett v. Coors Brewing Co.,* 189 F.3d 1221, 1228–29 (10th Cir.1999). Based on this principle, Ms. Heid, Mr. Grisham and Mr. Marsonette contend that their waiver of rights was not knowing and voluntary in light of certain non-statutory circumstances present at the time they signed their waivers. Specifically, Ms. Heid and Mr. Grisham contend that they signed their waivers under economic duress. Mr. Grisham further suggests that his waiver was fraudulently procured because defendants, at the time Mr. Grisham signed his waiver, failed to disclose to him that Mr. Thiessen had recently filed an ADEA lawsuit on behalf of himself and other similarly situated employees-a group that would have included Mr. Grisham. Finally, Ms. Heid, Mr. Grisham and Mr. Marsonette contend that their waivers are invalid because defendants fraudulently induced plaintiffs to sign the waivers. While their argument is not entirely clear, plaintiffs appear to contend that defendants failed to disclose to plaintiffs the existence of the purported pattern or practice of age discrimination and then procured the waivers in furtherance of that pattern or practice. As set forth in more detail below, the court rejects Ms. Heid's and Mr. Grisham's economic duress argument. The court, however, declines to address plaintiffs' fraud arguments at this juncture because the court is denying the motions for summary judgment in any event and because the parties have not fully briefed or developed their arguments concerning fraud. If necessary, and upon further briefing from the parties, the court will address plaintiffs' fraud arguments at a later date.

█ In his papers, Mr. Grisham maintains that his waiver of rights was invalid because he was "faced with the prospect of losing not only his job but his insurance benefits as well." Similarly, Ms. Heid contends that she signed the release in part because she needed the money to pay her bills and to continue to live. The Kansas Supreme Court has stated that duress "is that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient, in severity or apprehension, to overcome the mind and will of a person of ordinary firmness." *Evans v. Aylward,* 166 Kan. 306, 315, 201 P.2d 1044 (1949). In *Evans,* the court rejected the plaintiff's claim that he was forced to sign a settlement agreement out of economic necessity in light of his extreme financial stress. *Id.* at 314, 201 P.2d 1044. The Kansas Supreme Court emphasized that "financial distress" is "insufficient to avoid a release." *Id.* at 316, 201 P.2d 1044. The court further noted:

> Contracts, sales, or compromises made under stress of pecuniary necessity are of daily occurrence, and if such urgency is to affect their validity, no one could safely negotiate with a party who finds himself in difficulty by virtue of financial adversities.

*Id.; accord Campbell–Leonard Realtors v. El Matador Apartment Co.,* 220 Kan. 659, 665, 556 P.2d 459 (1976) (same). In sum, the *Evans* court stated, "all plaintiff's evidence established was that he preferred the immediate settlement on the terms

made than the hazard of a lawsuit. Parties are confronted with that problem every day." *Id.* at 317, 201 P.2d 1044.

Under Kansas law, then, the facts set forth by Mr. Grisham and Ms. Heid fall far short of establishing duress. The record is devoid of any evidence that defendants "threatened" Ms. Heid or Mr. Grisham in the manner contemplated by Kansas law. Moreover, the financial pressures alleged by Ms. Heid and Mr. Grisham "are present any time an employee faces the difficult choice between accepting additional benefits or pursuing his legal rights" and such pressures, standing alone, do not indicate a lack of free will. *See Bennett v. Coors Brewing Co.,* 189 F.3d 1221, 1231 (10th Cir.1999) (finding no evidence from which a reasonable jury could conclude that financial pressures subjugated the mind and will of plaintiffs such that they could not properly execute releases; examining analogous facts under Colorado law, which is identical to Kansas law regarding economic duress). Simply put, the court easily concludes that the facts set forth by plaintiffs are insufficient to establish a claim of economic duress.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment as to plaintiff Terry Grisham (doc. # 472) is **denied;** defendants' motion for summary judgment as to plaintiff Delilah Hicks (doc. # 474) is **denied;** defendants' motion for summary judgment as to plaintiff Melva Heid (doc. # 476) is **denied;** and defendants' motion for summary judgment as to plaintiff Robert Marsonette (doc. # 478) is **denied.**

**IT IS SO ORDERED.**